RICHARD D. ALBA et al., Appellants, v JEAN-CLAUDE KAUF-MANN, Respondent. [810 NYS2d 539]—

Crew III, J. Appeal from an order of the Supreme Court (Hummel, J.), entered June 13, 2005 in Rensselaer County, which denied plaintiffs' motion for summary judgment.

Defendant is the owner of approximately 37 acres of real property located in the Town of Stephentown, Rensselaer County. The property, which contains a pond and is located in a wooded area, is improved with a 19th-century farmhouse. Defendant and his spouse, Christine Cacace, reside in New York City and use the Rensselaer County property as a weekend or vacation home.

Defendant lost his full-time job in 1998 and, having apparently grown tired of the upkeep associated with maintaining an older home, decided to sell the property in 2001. Although defendant took the property off the market following the events of September 11, 2001, when Cacace lost her job in December 2003, financial considerations prompted defendant to again list the property for sale.

Plaintiffs were shown defendant's property and, after brief negotiations, offered the full asking price of $325,000. The parties executed a contract for sale in May 2004, and plaintiffs thereafter paid a deposit, obtained a mortgage commitment and, apparently, procured a satisfactory home inspection and title insurance. A closing was scheduled for July 15, 2004 but, on June 23, 2004, Cacace sent plaintiffs an e-mail indicating that she and defendant had "a change of heart" and no longer wished to go forward with the sale. Plaintiffs sent a reply e-mail two days later expressing their regret that the impending sale allegedly was causing Cacace distress, but indicating their intent to go forward with the scheduled closing. Cacace responded with another e-mail on June 27, 2004, this time informing plaintiffs that she suffered from multiple sclerosis and alleging that the "remorse and dread" over the impending sale was making her ill.

When defendant refused to close, plaintiffs commenced this action seeking specific performance of the underlying real estate contract. Defendant answered and raised various affirmative defenses, including, insofar as is relevant to this appeal, that plaintiffs had an adequate remedy at law and that specific performance would lead to an inequitable result. Plaintiffs thereafter moved for summary judgment, but Supreme Court denied the motion, finding questions of fact regarding whether specific performance is plaintiffs' only remedy and whether performance of the contract would result in an unreasonable hardship. This appeal by plaintiffs ensued.

There must be a reversal. In order to establish their entitlement to summary judgment, plaintiffs were required to demonstrate that they substantially performed their contractual obligations and were ready, willing and able to fulfill their remaining obligations, that defendant was able but unwilling to convey the property and that there is no adequate remedy at law (*see EMF Gen. Contr. Corp. v Bisbee*, 6 AD3d 45, 51 [2004], *lv dismissed* 3 NY3d 656 [2004], *lv denied* 3 NY3d 607 [2004]; *Morgan v Eitt*, 111 AD2d 586, 587 [1985]). Plaintiffs plainly discharged that burden here. After executing the underlying contract, plaintiffs paid a deposit, obtained a mortgage commitment, demonstrated that they had the financial wherewithal to purchase what was to be for them a vacation home, obtained a satisfactory home inspection and procured title insurance. In short, the record demonstrates that plaintiffs were ready, willing and able to close on July 15, 2004 and, but for defendant's admitted refusal to do so, would have consummated the transaction.

As to the remedy plaintiffs seek, the case law reveals that "the equitable remedy of specific performance is routinely awarded in contract actions involving real property, on the premise that each parcel of real property is unique" (*EMF Gen. Contr. Corp. v Bisbee, supra* at 52). Although certain defenses do exist including, insofar as is relevant here, unreasonable hardship, " 'the court's discretion to grant or deny specific performance of a contract for the sale of realty is not unlimited; unless the court finds that granting a decree of specific performance would be a drastic or harsh remedy, or work injustice, the court must direct specific performance' " (*id.*, quoting 91 NY Jur 2d, Real Property Sales and Exchanges § 204). Moreover, "[v]olitional unwillingness, as distinguished from good faith inability, to meet contractual obligations furnishes neither a ground for cancellation of the contract nor a defense against its specific performance" (*Meisels v 1295 Union Equities Corp.*, 306 AD2d 144, 145 [2003]).

Here, defendant argues and Supreme Court found that summary judgment was inappropriate because defendant raised a question of fact as to the uniqueness of the property and, hence, whether plaintiffs had an adequate remedy at law, and further, whether ordering specific performance would work an undue hardship. We disagree. As noted previously, each parcel of real property is presumed to be unique (*see EMF Gen. Contr. Corp. v Bisbee, supra* at 52), and defendant's conclusory and self-serving assertion—unaccompanied by any evidence of comparable listings or sales—that there are many similar properties for sale in

and around Rensselaer County is insufficient to raise a question of fact as to the uniqueness of the property. Hence, in our view, Supreme Court erred in finding that defendant tendered sufficient admissible proof to raise a question of fact as to whether plaintiffs had an adequate remedy at law.

We reach a similar conclusion with regard to defendant's claim of undue hardship. Defendant's entire argument on this point is premised upon the allegedly deleterious effects that the impending sale of the property had upon Cacace's health. Specifically, defendant contends that the stress from the proposed sale exacerbated Cacace's fatigue and other physical symptoms of her disease. It is critical to note, however, that Cacace is not a titled owner of the property in question, nor is she a signatory to the underlying real estate contract. Thus, defendant is asking this Court to effectively set aside his contractual obligations not because the proposed sale allegedly constitutes an undue hardship for him but, rather, because of the purported effect such sale would have upon his wife. This we cannot do.

Even accepting, for purposes of this discussion, that the alleged exacerbation of Cacace's symptoms is both genuine and causally related to the proposed sale of property, as she is not a party to the contract, her connection to the transaction is simply too attenuated for defendant to claim undue hardship. In our view, permitting a third party who is not a signatory to a real estate contract, such as a spouse or, potentially, a child, sibling or parent, to assert, via the titled owner, an undue hardship claim by voicing objection to or otherwise contending that the proposed sale is simply too much to bear would interject uncertainty and chaos into the otherwise orderly world of contract law. Simply put, permitting a defendant to raise an undue hardship defense under the circumstances present here would place a nearly impossible burden upon potential purchasers of real property—namely, to ascertain whether any of the signatories' relatives had any potential objection to the sale in question.

Moreover, even if we were to accept defendant's premise that the sanctity of the marital relationship and Cacace's long-standing attachment to the property at issue could form the basis for him to claim undue hardship, the medical evidence submitted in opposition to plaintiffs' motion falls far short of its mark. Preliminarily, we note that even Cacace acknowledged in her June 27, 2004 e-mail to plaintiffs regarding the then impending sale that she had received "assurances by all that [she would] get over it," and her e-mail suggests that those as-

surances were derived, in part, from professional counseling sessions. Additionally, the affidavit from defendant's expert, Daniel Silverman, who admittedly based his opinion upon the assumption that the stress allegedly experienced by Cacace was sincere, establishes, at best, that such stress "could explain" the change in symptoms that Cacace described, "could explain" the increase in the degree of fatigue Cacace purportedly experienced and "could account" for the increased limb weakness Cacace reported. And the unsworn letter from Cacace's treating physician, even if considered, reflects only that "[a]n increased level of stress can have the potential of exacerbating multiple sclerosis." To interpret such statements as drawing any sort of definitive correlation between the proposed sale and the onset or exacerbation of Cacace's symptoms would be entirely speculative. Thus, in our view, the record as a whole fails to contain sufficient admissible proof to raise a question of fact as to whether Cacace's medical condition constitutes an undue hardship for defendant. Accordingly, Supreme Court erred in denying plaintiffs' motion for summary judgment.

Cardona, P.J., Peters, Lahtinen and Rose, JJ., concur. Ordered that the order is reversed, on the law, with costs, and plaintiffs' motion granted.