[964 NYS2d 152]

In the Matter of THE REED FOUNDATION, INC., Respondent, v FRANKLIN D. ROOSEVELT FOUR FREEDOMS PARK, LLC, Appellant.

First Department, May 2, 2013

## APPEARANCES OF COUNSEL

*Sidley Austin LLP*, New York City (*James D. Zirin, James D. Arden* and *Michael D. Mann* of counsel), for appellant.

*Simpson Thacher & Bartlett LLP*, New York City (*Michael J. Garvey* and *Devin F. Ryan* of counsel), for respondent.

## OPINION OF THE COURT

ACOSTA, J.

Can aesthetic considerations trump a carefully considered and crafted contractual provision dictating the specific location of an inscription on a work of art? We hold that they cannot.

This case revolves around the Franklin D. Roosevelt (FDR) Four Freedoms Park (the Park), which commemorates FDR's famous "Four Freedoms" speech.* The Park is located on four acres of land at the southern tip of Roosevelt Island. It was designed in the 1970s by the distinguished architect, the late Louis I. Kahn. For over 30 years, efforts to develop the Park had been unsuccessful. Interest in the park was renewed in 2005 when Reed and Jane Gregory Rubin, the current officers of petitioner The Reed Foundation (the Foundation), funded an exhibit about the history of the long dormant project entitled "Coming to Light."

At the Rubins' urging, the Franklin & Eleanor Roosevelt Institute formed the Franklin D. Roosevelt Four Freedoms Park, LLC (the LLC) and undertook to raise the funds necessary to complete the Park. In March 2010, the Foundation contracted to give the LLC a $2.5 million grant. In exchange for the grant,

---

* In a January 6, 1941 address to Congress in which he spoke of the need for the United States to devote itself primarily to meeting the "foreign peril" then assailing "the democratic way of life," FDR looked forward to "a world founded upon four essential Freedoms": freedom of speech and expression, freedom of worship, freedom from want, and freedom from fear.

the LLC contractually agreed to carving Recognition Text (i.e., text recognizing the Rubins' and the Foundation's grant) at a specific location near a bust of FDR which was to be housed in the park. The Foundation was among the very first donors to make a grant in connection with this project, at a time when there remained considerable doubt as to whether the LLC could raise the funds necessary to complete the project. The Foundation's grant enabled the LLC to qualify for essential public funding from New York State and New York City, after which the LLC was able to raise the necessary funds to complete the Park. It was only after the necessary funds were raised and the Park essentially completed that the LLC reneged on its obligation to engrave the Recognition Text at the specified location, citing aesthetic concerns.

The Foundation's grant is governed by a series of interrelated agreements, including a Grant Agreement, entered into by the Foundation, the LLC and the Franklin & Eleanor Roosevelt Institute, which is the sole member of the LLC, and a Recognition Agreement, executed by the Foundation and the LLC.

The agreements detail the LLC's obligation to engrave specific text recognizing the Foundation and its founders (the Threshold Recognition Text) on a 12-foot-by-12-foot granite wall, which is part of a structure in the Park called the "Threshold" (or the niche) that houses a bronze bust of FDR. It was to read, "IN HONOR OF VERA D. RUBIN AND SAMUEL RUBIN. THE REED FOUNDATION." As depicted in the photographs, the placement of the Threshold Recognition Text was to be low to the ground, in small font less than two inches high along the bottom of a solid 12-foot-by-12-foot granite wall on the west-facing side of the Threshold. On June 21, 2012, the Foundation consented to a request by the LLC that the lettering for the Threshold Recognition Text be changed from black to a muted gray.

The Grant Agreement provides that the Foundation's grant will fund construction of the Park, including "the carving of, and/or other display of, the Threshold Recognition Text." Under the Grant Agreement, the LLC agreed to "construct the Recognition in accordance with the terms, conditions and specifications set forth in the Recognition Agreement." The Grant Agreement, in section 7, "Termination/Survival," gives the Foundation alone the right in its sole discretion, to terminate the Grant Agreement by written notice of termination to the Institute and the LLC, (1) "if any aspect of the Project materi-

ally changes or it becomes impracticable to comply with requirements of Sections 1 and 2 of the Recognition Agreement"; or (2) if "a Default (as defined in the Recognition Agreement) occurs."

The Recognition Agreement sets forth the "terms, conditions and specifications for the construction, placement and design of the Recognition and the use of [the Foundation's funds] with respect to the [Park]" and specifies the precise location and wording of the "Threshold Recognition Text," as well as requirements for the carving and maintenance of the inscription.

Section 6 of the Recognition Agreement defines "default" to mean, among other things, "if any aspect of construction of the . . . Park materially changes or it becomes impracticable to comply with requirements of Sections 1-4 of this Recognition Agreement." Importantly, under this section, the LLC also agreed that the Foundation would be entitled to specific performance in the event of the LLC's breach.

By July 2012, the LLC had completed the inscription of an excerpt from the Four Freedoms speech on the south-facing side of the Threshold but had not yet commenced the engraving of the Threshold Recognition Text. Instead of completing the Threshold Recognition Text, the LLC began pressuring the Foundation to consent to relocate the Foundation's Recognition Text to an area called the "Grand Staircase" at the opposite end of the Park, where other donors' names were going to be engraved. The Foundation declined, and insisted that the LLC honor the Recognition Agreement.

On October 2, 2012, just over two weeks before the Park's scheduled dedication, the LLC advised the Foundation that it was refusing to perform because "[o]ur architects and consultants have told us" that including the Recognition Text on the Threshold is not the "best aesthetic." The Foundation seeks specific performance. The LLC offered to return the Foundation's money.

The Foundation commenced this proceeding, seeking a declaration that the LLC breached its contractual obligations, and an order directing specific performance of the agreements. In opposition to the petition, and notwithstanding the terms of the agreements, the LLC now argued, in an affidavit by its chairman, that carving the Recognition Text where the Foundation insisted was totally inconsistent with the objective of the Foundation's own gift, and that this was a case that "cries out

for equitable relief, not tipping on the side of a selfish private interest, but on the side of the public in a lasting historical monument." The LLC also submitted an affidavit of Jack Reynolds, director of the Yale University Art Gallery, who maintained that to inscribe the Recognition Text "within the heart of Louis Kahn's public architectural masterwork is akin to signing a donor's name within the frame of great painting, something . . . that no donor would ever insist on . . . doing to a great Picasso or Van Gogh canvas upon donating such to a museum." In addition, the LLC submitted an affidavit of the stone carver who carved the sculpture niche who agreed that the proposed inscription would be inappropriate and not in keeping with Kahn's design and his artistic intention, and an affidavit by Nathaniel Kahn, the architect's son who stated that placing the Recognition Text on the sculpture niche would damage his father's design, the "aesthetic purity of the space, and the purpose of the Park."

Aesthetic considerations extraneous to a contract cannot trump its terms. We thus find that the LLC breached its contractual obligations to the Foundation. We find further that the motion court properly ordered specific performance by directing the engraving of the Recognition Text in accordance with the Recognition Agreement (37 Misc 3d 1226[A], 2012 NY Slip Op 52174[U] [2012]; *see Matter of Lamberti v Angiolillo*, 73 AD3d 463, 464 [1st Dept 2010], *lv denied* 15 NY3d 711 [2010]; *see also Trustees of Dartmouth College v Woodward*, 17 US 518, 656 [1819, Washington, J.] [a contract is a "transaction between two or more persons, in which each party comes under an obligation to the other, and each reciprocally acquires a right to whatever is promised by the other"]). In the Recognition Agreement, the LLC expressly agreed

> "that the Foundation's remedies at law for a failure to perform, breach or threatened breach of Section 1 ['Threshold Recognition Text'] and 2 ['agreements, Representations and Warranties'] of this Recognition Agreement would be inadequate and the Foundation would suffer irreparable damages as a result of such failure to perform, breach or threatened breach. In recognition of this fact, the LLC agrees that, in the event of the LLC's failure to perform, breach or threatened breach, in addition to any remedies at law, the Foundation, without posting any bond, shall be entitled to seek equitable relief in the form of specific performance."

The LLC's failure to perform would deprive the Foundation of recognition of its substantial contribution to the Park in an inscription placed in a unique location that has special significance to the Foundation. Indeed, this Court has long recognized that specific performance is appropriate in situations involving unique articles of property "having a special and unascertainable" quality (*see Chabert v Robert & Co., Inc.*, 273 App Div 237, 238 [1st Dept 1948]).

■ The LLC raises for the first time on appeal the contractual defense of impracticability. However, the LLC's changed aesthetic vision did not render its performance impracticable or impossible. The defense of impossibility or impracticability of performance is "applied narrowly" such that performance is excused "only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" and that "the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract" (*see Kel Kim Corp. v Central Mkts.*, 70 NY2d 900, 902 [1987]). The LLC does not contend that it is unable to complete the agreed engraving. Rather, it has chosen not to do so because its "advisors" believe, on aesthetic grounds, that there should be no such engraving on the Threshold. Nor do the termination provisions in the Grant Agreement support the LLC's view, since they address situations in which, for example, the niche is not constructed.

The time for the LLC to have voiced its aesthetic concerns was at the time the Recognition Agreement was negotiated, not after it had "accepted and spent the Foundation's money" (*see Allegheny Coll. v National Chautauqua County Bank of Jamestown*, 246 NY 369, 379 [1927]). As the Court of Appeals explained in *Allegheny*,

> "[t]he [donor] does not say: I hand you $1,000, and you may make up your mind later . . . whether you will undertake to commemorate my name. What she says is in effect is this: I hand you $1,000, and if you are unwilling to commemorate me, the time to speak is now" (*id.*).

■ Furthermore, while the LLC cites a public interest in protecting the aesthetics of the Park, the public interest in enforcing donor recognition agreements outweighs the shifting aesthetic concerns regarding the LLC (*see Smithers v St. Luke's-Roosevelt Hosp. Ctr.*, 281 AD2d 127, 140-141 [1st Dept 2001]). Indeed, the failure "to protect the interests of individual

donors" risks the result that "donors may become more hesitant to contribute at all" (Lisa Loftin, Note, *Protecting the Charitable Investor: A Rationale for Donor Enforcement of Restricted Gifts*, 8 BU Pub Int LJ 361, 380, 385 [Winter 1999]; *see Smithers* at 140). Moreover, "a donor's desire to perpetuate his name as a benefactor of a particular charitable institution and humankind is not a selfish one. These desires are deeply ingrained in human nature and are effective motivating forces in donations of this character" (*Smithers*, 281 AD2d at 140 [internal quotations marks and citation omitted]).

We reject the LLC's argument that the petition and order to show cause are procedurally deficient (CPLR 103 [c]; *see Matter of Carroll v Gammerman*, 193 AD2d 202, 205 [1st Dept 1993]).

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered November 14, 2012, which declared that respondent breached its contractual obligations to petitioner to complete an agreed engraving at the Franklin D. Roosevelt Four Freedoms Park, and directed specific performance of the obligation, should be affirmed, without costs.

Tom, J.P., Saxe, Freedman and Feinman, JJ., concur.

Order, Supreme Court, New York County, entered November 14, 2012, affirmed, without costs.