(January 5, 2016)

■ BLACK BULL CONTRACTING, LLC, Appellant, v INDIAN HARBOR INSURANCE COMPANY, Respondent. [23 NYS3d 59]—

Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered January 7, 2013, which, in an action seeking a declaratory judgment that defendant insurer is obligated to defend and indemnify plaintiff insured in an underlying personal injury action, granted defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), and denied plaintiff's cross motion for summary judgment, unanimously modified, on the law, to declare that defendant has no obligation to defend and indemnify plaintiff in the underlying action, and otherwise affirmed, with costs awarded to defendant against plaintiff. The Clerk is directed to enter judgment accordingly.

Plaintiff Black Bull Contracting, LLC (Black Bull) is the named insured under a commercial general liability (CGL) policy issued by defendant Indian Harbor Insurance Company (Indian Harbor) for the period from March 2011 to March 2012. The CGL coverage form used in the policy states that the insured is covered for liability for " 'bodily injury' or 'property damage' to which this insurance applies." An endorsement to the CGL coverage form (denominated "Endorsement #003") provides: "This insurance applies only to operations that are classified or shown on the Declarations or specifically added by endorsement to this Policy." The declarations page sets forth four classifications, with associated code numbers: (1) "Carpentry—interior" (91341); (2) "Dry Wall or Wallboard Installation"

(92338); (3) "Contractors—subcontracted work—in connection with construction, reconstruction, repair or erection of buildings—Not Otherwise Classified" (91585); and (4) "Contractors—subcontracted work—in connection with construction, reconstruction, repair or erection of buildings—Not Otherwise Classified—uninsured/underinsured" (91585c). It is evident from the declarations page that the specified classifications were the basis on which the premium was calculated.

Black Bull was engaged by nonparties United Airconditioning Corp. II and United Sheet Metal Corp. (collectively, United) to perform certain work on a building in Long Island City owned by United. On August 26, 2011, an employee of Black Bull named Luis Mora, while using a jackhammer to demolish a chimney in the United building, was injured when he was struck by a piece of concrete from the chimney. Mora commenced an action against United in Supreme Court, Kings County (the *Mora* action), and United commenced a third-party action against Black Bull. Black Bull tendered to Indian Harbor its defense in the *Mora* action, as well as the defense of United, an additional insured under Black Bull's Indian Harbor policy. After a delay of more than two months from its receipt of the notice of claim, Indian Harbor disclaimed coverage on the ground that demolition work by Black Bull, the activity that gave rise to Mora's injury, was not within any of the four classifications of work covered by the policy.

This action by Black Bull seeks a declaration that Indian Harbor is obligated to defend and indemnify Black Bull and United (the latter as an additional insured under Black Bull's policy) in the *Mora* action. In lieu of answering, Indian Harbor moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). Black Bull cross-moved for summary judgment. Supreme Court granted Indian Harbor's motion and denied Black Bull's cross motion. For the reasons discussed below, we modify only to issue a declaration in favor of Indian Harbor, and otherwise affirm.

Initially, we note that Supreme Court correctly determined that Indian Harbor's disclaimers, had they been subject to the timeliness requirement of Insurance Law § 3420 (d) (2), would have been untimely as a matter of law. The record shows that Indian Harbor issued separate disclaimers to Black Bull 79 days and 85 days after it received the notice of claim. Since the basis of the disclaimers was apparent from the face of the notice of claim and accompanying correspondence, Indian Harbor's extensive delays in issuing the disclaimers were unreasonable as a matter of law (*see National Cas. Co. v*

*American Home Assur. Co.*, 102 AD3d 553, 553 [1st Dept 2013]; *Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co.*, 27 AD3d 84, 88-89 [1st Dept 2005]; *West 16th St. Tenants Corp. v Public Serv. Mut. Ins. Co.*, 290 AD2d 278 [1st Dept 2002], *lv denied* 98 NY2d 605 [2002]).

Notwithstanding the untimeliness of Indian Harbor's disclaimers under Insurance Law § 3420 (d) (2), Supreme Court correctly determined that Indian Harbor does not owe Black Bull or United coverage with respect to the *Mora* action. Whether the untimeliness of Indian Harbor's disclaimer under Insurance Law § 3420 (d) (2) precludes it from denying coverage depends on whether there was "a lack of coverage in the first instance" or "a lack of coverage based on an exclusion" (*Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d 185, 189 [2000]). As the Court of Appeals elaborated in *Worcester*: "Disclaimer pursuant to section 3420 (d) [now § 3420 (d) (2)] is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed. By contrast, disclaimer pursuant to section 3420 (d) is necessary when denial of coverage is based on a policy exclusion without which the claim would be covered" (95 NY2d at 188-189).

We agree with Supreme Court that the subject policy's classification limitations of coverage merely define the activities that were included within the scope of coverage "in the first instance" (*Worcester*, 95 NY2d at 188) and do not constitute exclusions from coverage that would otherwise exist.[1] Stated otherwise, the relevant policy language of Endorsement #003 and the declarations page states the activities that *are* covered. If the loss in question did not arise from activities within the classifications set forth on the declarations page, then coverage is lacking "by reason of lack of inclusion" (*Zappone v Home Ins. Co.*, 55 NY2d 131, 137 [1982] [internal quotation marks omitted]), and "the policy as written could not have covered the liability in question under any circumstances" (*id.* at 134).

Our determination that the classification limitation in the subject policy does not constitute an exclusion finds support in *Max Specialty Ins. Co. v WSG Invs., LLC* (2012 WL 3150577, 2012 US Dist LEXIS 108564 [ED NY, Aug. 2, 2012, No. 09-CV-

---

1. We point out that, as correctly noted by Supreme Court and agreed by both parties, it is not dispositive that the word "exclusion" is not used in the relevant portions of the subject policy (*see Planet Ins. Co. v Bright Bay Classic Vehs.*, 75 NY2d 394, 400 [1990]).

05237 (CBA) (JMA)]). The CGL policy at issue in *Max Specialty* was based on a coverage form that, like the one at issue here, afforded coverage for losses *"to which this insurance applies"* (2012 WL 3150577, *3, 2012 US Dist LEXIS 108564, *8 [internal quotation marks omitted]) and contained an endorsement providing that the insurance "applies only to 'bodily injury' . . . arising out of only those operations designated, listed and described in the declarations page" (2012 WL 3150577, *1, 2012 US Dist LEXIS 108564, *3). The federal district court, applying New York law, held that the *Max Specialty* policy was "written to cover only those business operations in the areas of interior carpentry and drywall and wallboard installation," the classifications set forth in the declarations (2012 WL 3150577, *3, 2012 US Dist LEXIS 108564, *8). Therefore, the court concluded, the lack of coverage for liability arising from an activity outside of those classifications was not based on an exclusion and was not waived by an untimely disclaimer (*id.*).

Black Bull does not attempt to distinguish *Max Specialty*, instead arguing that the case was "erroneous[ly]" decided. We disagree, and find *Max Specialty*'s reasoning persuasive in reaching our conclusion that the classification limitation endorsement to Black Bull's policy was not an exclusion but a definition of the scope of coverage. Contrary to Black Bull's contention, the policy's CGL coverage form did not define coverage in a broad manner that, but for Endorsement #003, would have included losses arising from activities outside the classifications set forth in the declarations. Rather, as in *Max Specialty*, the coverage form provides that Indian Harbor "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' *to which this insurance applies*" (emphasis added). The coverage form does not purport to fully define the losses "to which this insurance applies," and Endorsement #003 specifies that the insurance applies only to losses arising from the classifications of operations set forth on the declarations page.

Black Bull's reliance on *Planet Ins. Co. v Bright Bay Classic Vehs.* (75 NY2d 394 [1990]) is misplaced. The *Planet Insurance* policy covered cars in a rental fleet that were rented for less than 12 months (*id.* at 398). The Court of Appeals deemed this definition to be an exclusion as applied to a car leased for 24 months because a car that otherwise would have been covered as part of the insured's fleet "became 'uncovered' upon the happening of a subsequent event: i.e., the rental of Bright Bay's car for a lease period other than that prescribed in the policy.

Thus, it cannot be said that there was never a policy in effect covering the involved automobile" (*id.* at 401). In reaching this conclusion, the Court was influenced by the public policy consideration that the person renting the vehicle, which was represented as covered by insurance, would have had no way of knowing that the period of the lease negated the coverage (*id.*). No such considerations are present in this case, where Black Bull, the named insured, should have known from the outset that it would not be covered for liabilities arising from operations outside the classifications set forth in the policy declarations.[2]

Finally, Supreme Court correctly determined that, because the demolition work in which Mora was engaged does not fall within any of the classifications set forth in the policy declarations, neither Black Bull nor United is covered for this loss under Black Bull's Indian Harbor policy. The complaint in the *Mora* action alleges that Mora was demolishing a chimney with a jackhammer when he was injured. On appeal, Black Bull does not argue that this activity could be deemed to fall under the "Carpentry—interior" or "Dry Wall or Wallboard Installation" classifications, but contends that it falls within the scope of the classification for "Contractors—subcontracted work—in connection with construction, reconstruction, repair or erection of buildings—Not Otherwise Classified," which bears the code number 91585 (classification code 91585). It is Black Bull's position that classification code 91585 could reasonably be interpreted to extend coverage to liability arising from any work subcontracted to Black Bull, as opposed to liability arising from work that Black Bull subcontracts to other contractors. Such an interpretation, however, is unten-

---

2. *Greater N.Y. Mut. Ins. Co. v Clark* (205 AD2d 857 [3d Dept 1994], *lv denied* 84 NY2d 807 [1994]), which deemed the restriction of automobile liability coverage to losses arising from permissive use of the vehicle to constitute an exclusion, is distinguishable on grounds similar to *Planet Insurance.* Also unavailing is Black Bull's reliance on *Tower Ins. Co. of N.Y. v BCS Constr. Servs. Corp.* (118 AD3d 527 [1st Dept 2014]), which concerned whether the subject loss fell within the policy's coverage under its classification limitation endorsement. The timeliness of the carrier's disclaimer was not at issue in *Tower,* and the decision therefore did not consider whether the classification limitation endorsement functioned as an exclusion from coverage, as opposed to part of the definition of coverage in the first instance, for purposes of Insurance Law § 3420 (d) (2). Similarly, the Second Department in *Burlington Ins. Co. v Guma Constr. Corp.* (66 AD3d 622 [2d Dept 2009]) did not rule on whether the classification limitation endorsement constituted an exclusion, but found that the allegations of the underlying complaint "suggest[ed] a reasonable possibility of coverage" (*id.* at 625). We find the remaining authorities cited by Black Bull on this issue either inapposite or unpersuasive.

able as a matter of law, because it would render meaningless and without effect the two previous classification limitations by extending Black Bull's coverage to all of its contracting operations, whether or not they constitute carpentry or wall installation. "The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect" (*Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46 [1956]; *see also Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396, 403 [1984]; *Corhill Corp. v S.D. Plants, Inc.*, 9 NY2d 595, 599 [1961]; *Metropolitan Suburban Bus Auth. v County of Nassau*, 126 AD3d 434, 435 [1st Dept 2015], *lv denied* 25 NY3d 907 [2015]). Concur—Friedman, J.P., Renwick, Moskowitz and Richter, JJ.