301 E. 60th St. LLC v Competitive Solutions LLC (2023 NY Slip Op 02842)

301 E. 60th St. LLC v Competitive Solutions LLC

2023 NY Slip Op 02842

Decided on May 30, 2023

Appellate Division, First Department

GONZ LEZ, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 30, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Jeffrey K. Oing Lizbeth González Saliann Scarpulla Julio Rodriguez III

Index No. 157973/21 Appeal No. 17303 Case No. 2022-04304 

[*1]301 East 60th Street LLC, Plaintiff-Respondent-Appellant,
v
Competitive Solutions LLC, Defendant-Appellant-Respondent, The New York City Department of Housing Preservation and Development, Defendant.

Cross-appeals from the order of the Supreme Court, New York County (Barry R. Ostrager, J.), entered September 8, 2022, which denied plaintiff's motion for summary judgment on its claims for specific performance, an injunction, declaratory relief, and attorneys' fees and to dismiss defendant's affirmative defenses, and denied defendant's cross-motion for summary judgment dismissing the complaint.

Glenn Agre Bergman & Fuentes LLP, New York (Jed I. Bergman, Tian "Skye" Gao and Chloe F. Rosenberg of counsel), for appellant-respondent.
Rosenberg & Estis, P.C., New York (Jeffrey Turkel and Michael A. Pensabene of counsel), for respondent-appellant.

González, J.

At issue is whether a contract pertaining to the sale of Inclusionary Air Rights (IARs) can be subject to specific performance. In view of the circumstances presented, we hold that specific performance is an appropriate remedy and modify the lower court's decision to grant plaintiff's motion for summary judgment.
Plaintiff is the developer of five adjacent lots located at 1140-1152 Second Avenue in Manhattan. Plaintiff's principal, Sean Lavin, is an experienced New York City real estate developer. Defendant's principal, John LaGratta, is defendant's only member and decision maker. He is an attorney and experienced real estate professional who has engaged in multiple transactions involving IARs. As of December 12, 2020, defendant was permitted to transfer 35,706 square feet of IARs within Manhattan Community Board 8 (CB 8), which represents the Upper East Side and Roosevelt Island, or within an adjacent community district.
IARs are transferable air rights devised by the City of New York to incentivize developers to build or rehabilitate affordable housing. IARs may be sold through private sale by obtaining a certificate of eligibility for zoning bonus (certificate of eligibility) from the New York City Department of Housing Preservation and Development (HPD).
Sometime in March 2021, plaintiff sought 21,000 square feet of IARs in connection with a development project spanning five adjacent lots at 1140-1152 Second Avenue in Manhattan. Lavin initially reached out to one broker who allegedly found a seller who was willing to sell its IARs for $175 per square foot. Lavin informed another broker (plaintiff's broker) of this potential deal and instructed him to find a better price. Plaintiff's broker eventually connected with defendant to discuss a sale of defendant's IARs in CB 8. During the negotiation process, plaintiff's broker informed defendant that other sellers on the market were willing to sell their IARs for $165-$175 per square foot. To corroborate plaintiff's broker's representations, LaGratta discussed the sale with his lawyer and two brokers familiar with IARs, who were unaware of any sales of IARs in CB 8 during the pandemic.
During his deposition, LaGratta discussed his familiarity with IAR sales ranging from $175-$500 per square foot. LaGratta explained that IAR market prices [*2]were difficult to assess because of factors such as the COVID pandemic's impact on the value of the real estate development market and the correlating IAR market. Moreover, IAR prices were not recorded in any publication, and certificate of eligibility holders did not pay any taxes while holding the certificate. LaGratta's attempts to corroborate the price only lasted a few hours. He made no further attempts to determine the market for IARs.
On May 18, 2021, the parties entered into a purchase and sale agreement (Agreement), wherein defendant agreed to sell 21,000 square feet of IARs to plaintiff for $155 per square foot. [FN1] Plaintiff was solely responsible for the broker's fee.
On May 26, 2021, plaintiff's broker, on behalf of an unrelated party, emailed defendant to discuss a potential sale of defendant's remaining IARs in CB 8. LaGratta, replied, "I would sell the remaining IAR, but not at that price again, we are already regretting that price immensely." Several days later, plaintiff's broker emailed Lavin, informing him that LaGratta asked to renegotiate because he believed that he could sell the IARs at $250 per square foot. Plaintiff refused to renegotiate the terms of the Agreement.[FN2]
According to paragraph 4(a) of the Agreement, closing would occur 14 calendar days from HPD's issuance of a new certificate of eligibility. On June 5, 2021, HPD issued a new certificate of eligibility naming plaintiff as the benefit transferee and defendant as the benefit transferor (see generally New York City Zoning Resolution §§ 23-96[a], 23-150, 23-154).
By letter dated June 21, 2021, 16 calendar days after HPD's issuance of the new certificate of eligibility, defendant informed plaintiff that it would not transfer the IARs at the previously negotiated price. Defendant claimed that plaintiff made false representations about other alleged IAR sellers so as to induce defendant to sell its IARs at a reduced price. Defendant offered to return the deposit and, in the alternative, sought to adjust the IAR price to $200 per square foot.
By summons and complaint dated August 18, 2021, plaintiff commenced this action against defendant seeking specific performance to compel defendant to sell the air rights at $155 per square foot, as agreed upon by the parties. Plaintiff relied principally on paragraph 8(b) of the Agreement, which provided that, if defendant failed to close, then plaintiff
"shall have the right, in its sole discretion and as its sole and exclusive remedy, to either (a) seek specific performance of Seller's obligations under this Agreement or (b) terminate this Agreement by notice to Seller and cause Escrow Agent to return the Deposit to Purchaser, together with any interest earned thereon" (emphasis added).
Paragraph 8(b) further provided:
"In the event Purchaser shall not be successful in any action for specific performance, Purchaser shall still have the right to pursue the remedies in [sic] set forth in (b) above. Notwithstanding the [*3]foregoing, in the event that Seller's default hereunder is the result of HPD refusing to issue the Certificate due to circumstances that are beyond the reasonable control of Seller, then in such case, Purchaser's remedies hereunder shall be limited to the remedies set forth in (b) above" (emphasis added).
The Agreement also provided for the prevailing party to recover attorneys' fees and disbursements.
Defendant submitted an answer dated October 15, 2021. Defendant denied the complaint's material allegations and asserted affirmative defenses, including that plaintiff was not entitled to specific performance because it had an adequate remedy at law, IARs were not unique, and plaintiff's claims were barred by fraud, unclean hands, equitable estoppel, and waiver. Defendant maintained that plaintiff had not suffered any cognizable damages.[FN3]
After discovery was completed, plaintiff moved for summary judgment. Plaintiff contended that it was entitled to specific performance as both an equitable and contractual remedy. Plaintiff additionally moved for attorneys' fees and declaratory and injunctive relief. Plaintiff also sought dismissal of defendant's affirmative defenses, asserting that defendant could not establish justifiable reliance on plaintiff's alleged misrepresentations, which were mere puffery and not actionable as representations of fact.
Defendant cross-moved for summary judgment, contending that there was no equitable or contractual remedy available for plaintiff. In asserting that there was no automatic contractual right to specific performance in New York, defendant claimed that the Agreement only afforded plaintiff the right to "seek specific performance — not the guaranteed right to receive it." As such, defendant posited that plaintiff could not show that there was no adequate remedy at law, since the IARs were neither "unique" nor "real property." According to defendant, plaintiff's broker's statements were factual representations on which defendant justifiably relied.
Supreme Court denied both motions. The court determined that issues of fact existed as to whether defendant was contractually obligated to render specific performance, and whether the air rights were unique. Analysis When sophisticated parties enter into a contract, the contract should be enforced according to its terms (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004], quoting W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; see also 101123 LLC v Solis Realty LLC, 23 AD3d 107, 113 [1st Dept 2005] [courts must "enforce the contract as written, including the applicable remedies"]). Interpretation of unambiguous contracts is a question of law and a proper function of the court on a motion for summary judgment (Middlebury Off. Park Ltd. v General Datacomm Indus., 248 AD2d 313, 315 [1st Dept 1998]).
Defendant contends that the Agreement does not provide for the automatic right to specific performance because private parties cannot [*4]manufacture a contractual right to receive specific performance. Defendant emphasizes that the Agreement only provides for the buyer to "seek" specific performance as opposed to "receiving" it.
We find defendant's interpretation of the Agreement to be unpersuasive. The mere incorporation of the term "seek" in an agreement does not create a barrier to contractual relief (see Matter of Reed Found., Inc. v Franklin D. Roosevelt Four Freedoms Park, LLC, 108 AD3d 1, 7 [1st Dept 2013] [specific performance granted where contract provided that the plaintiff "shall be entitled to seek equitable relief in the form of specific performance"]; Bergmann v Bergmann, 89 AD2d 516, 516 [1st Dept 1982] [affirming grant of summary judgment on the plaintiff's cause of action seeking specific performance where contract provided that "the parties shall have the right to seek legal remedies"]). Under defendant's interpretation of the Agreement, there would be no situation where plaintiff could succeed in an action for specific performance.[FN4] Not surprisingly, defendant does not explain why the parties would incorporate a provision that could never come into effect (see Black Bull Contr. LLC v Indian Harbor Ins. Co., 135 AD3d 401, 406 [1st Dept 2016] ["The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect"], quoting Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 46 [1956]).
To be sure, there is no automatic contractual right to specific performance; it is an equitable remedy for a breach of contract (see Cho v 401-403 57th St. Realty Corp., 300 AD2d 174, 174 [1st Dept 2002]). The grant of specific performance is a matter of judicial discretion, which does not depend on "the mere pleasure of the court, but . . . is controlled by the established doctrines and settled principles of equity" (Da Silva v Musso, 53 NY2d 543, 547 [1981],quoting Willard v Tayloe, 75 US 557, 567 [1869]). A court reviewing an agreement that provides for specific performance should accord deference to the parties' manifest intent, unless enforcement of the provision would produce an inequitable result (see id. ["denial of specific performance would constitute an abuse of discretion as a matter of law if there is no evidence to sustain the conclusion that requiring it would be a 'drastic' or harsh remedy"]). Parties are bound to the terms of their contracts, including their remedies — mere fluctuations in value do not vitiate the terms of their agreement (see id. at 550; 101123 LLC, 23 AD3d at 113).
A party that is contractually entitled to specific performance must demonstrate that it substantially performed its contractual obligations, that the breaching party was able to convey, and that there was no adequate remedy at law (EMF Gen. Contr. Corp. v Bisbee, 6 AD3d 45, 51 [1st Dept 2004], lv dismissed 3 NY3d 656 [2004], lv denied 3 NY3d 607 [*5][2004]; see also Piga v Rubin, 300 AD2d 68 [1st Dept 2002] [plaintiff entitled to specific performance where the defendant "in a prolonged attempt to deprive plaintiffs of their bargain, repeatedly frustrated the closing of the real estate transaction to which the parties had agreed"], lv dismissed & denied 99 NY2d 646 [2003]).
Here, it is clear that plaintiff satisfied the first two criteria. The core question is whether plaintiff has an adequate remedy at law. We note that the existence of a particular remedy at law, such as money damages or, as in this instance, a return of the deposit, does not necessarily make it equitable (see Restatement [Second] of Contracts § 359 ["Adequacy is to some extent relative, and the modern approach is to compare remedies to determine which is more effective in serving the ends of justice"]).
The remedy of specific performance must be balanced by "the expectation interest of the injured party" against whether it would impose a disproportionate or inequitable burden on the breaching party (Cho, 300 AD2d at 174 [internal quotation marks omitted]; see also Sokoloff v Harriman Estates Dev. Corp, 96 NY2d 409, 415 [2001]; Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 193 [1986]). The reviewing court must endeavor to place the parties in the same position they would have been in had the contract been performed according to its terms (see Freidus v Eisenberg, 123 AD2d 174, 177 [2d Dept 1986]; Colonie Motors v Heritage Corp. of N.Y., 61 AD2d 1105, 1107 [3d Dept 1978]).
Defendant's unwillingness to perform its contractual obligations "furnishes neither a ground for cancellation of the contract nor a defense against its specific performance" (Meisels v 1295 Union Equities Corp., 306 AD2d 144, 145 [1st Dept 2003]; see Alba v Kaufmann, 27 AD3d 816, 818 [3d Dept 2006]). Defendant makes no argument that specific performance of the contract would impose a disproportionate or inequitable burden (see Cho, 300 AD2d at 175).
Instead, defendant contends that plaintiff is not entitled to specific performance because the return of plaintiff's deposit is an adequate remedy for breach of an agreement to convey IARs. Traditionally, specific performance is the "proper remedy in actions for breach of contract for the sale of real property" (id.). Defendant maintains that plaintiff's right to specific performance fails as a matter of law because IARs are neither unique nor real property, and the IARs within a community district are indistinguishable from one another.
We note that New York courts have consistently considered air rights an "interest in real property" (Harmit Realties LLC v 835 Ave. of the Ams., L.P.,128 AD3d 460, 460 [1st Dept 2015]; see also Macmillan, Inc. v CF Lex Assoc., 56 NY2d 386, 393 n 3 [1982] ["The zoning resolution provides sophisticated procedures to facilitate the functional transfer of air rights. In so doing it treats of property rights long antedating the enactment of the resolution"]; Atlantic Dev[*6]. Group, LLC v 605 W. 42nd LLC, 2010 WL 5827556, *1 [Sup Ct, NY County 2010] [treating IARs as "real property rights"]). We emphasize that specific performance is not solely limited to real property; the remedy may also apply in other instances, such as a conveyance of shares of stock in a close corporation or an agreement to sell shares in a cooperative real estate corporation (see Kaplan v Lippmann, 75 NY2d 320 [1990]; Matter of Fontana D'Oro Foods, [Agosta], 65 NY2d 886, 888 [1985]; Cho, 300 AD2d at 175; Bergmann, 89 AD2d at 516]).
We further stress that specific performance may be available in actions where the market is opaque and the price of the goods is subject to intense fluctuation (see Van Wagner, 67 NY2d at 193 ["The point at which breach of a contract will be redressable by specific performance . . . must lie not in any inherent physical uniqueness of the property but instead in the uncertainty of valuing it"]). LaGratta himself emphasized that it was difficult to ascertain the value of IARs due to the lack of documentation. Here, specific performance is warranted because of the parties' incorporation of a specific performance in their agreement, defendant's willful breach of the agreement, the absence of an inequitable or disproportionate burden, and the admitted uncertainty of valuing IARs.
We find that defendant's affirmative defense of fraud lacks merit. To state a claim for fraud in the inducement, "there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury" (Genger v Genger, 144 AD3d 581, 582 [1st Dept 2016]). Defendant advances no reasonable explanation as to why LaGratta, a sophisticated real estate professional, would rely solely on the representations of another party (see Arfa v Zamir, 76 AD3d 56, 58-60 [1st Dept 2010] [fraud claims dismissed based on plaintiff's sophistication and failure to perform adequate diligence], affd 17 NY3d 737 [2011]; Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 100 [1st Dept 2006], lv denied 8 NY3d 804 [2011]). Defendant can "hardly claim with any credibility that he, a savvy businessman, entered into the resulting agreements lulled by faith or trust in the parties across the bargaining table, or that he unwittingly gave up some valued right in the bargain" (Shea v Hambros PLC, 244 AD2d 39, 47 [1st Dept 1998]).
LaGratta concedes that he spent only a few hours discussing the market price with his lawyer and two brokers. Defendant made no further effort to narrow down the market price for IARs. While the evidence was admittedly difficult to obtain, it was neither impractical nor impossible. Defendant demonstrated neither reasonable reliance nor due diligence by allegedly relying on the uncorroborated representations of a broker who was not in his employ; he proceeded at his own peril (see MAFG Art Fund, LLC v Gagosian, 123 AD3d 458, 459 [1st Dept 2014] ["As a matter of law, these sophisticated [*7]defendants cannot demonstrate reasonable reliance because they conducted no due diligence; for example, they did not ask defendants, "'Show us your market data'"], lv denied 25 NY3d 901 [2015]; Stuart Lipsky, P.C. v Price, 215 AD2d 102, 103 [1st Dept 1995] [no fraud where relying party "had the means available to ascertain the truth, nevertheless chose to rely solely upon the alleged oral representations without any effort to verify that information"]).
A plaintiff "may not seek a declaratory judgment when other remedies are available, such as a breach of contract action" (Singer Asset Fin. Co., LLC v Melvin, 33 AD3d 355, 358 [1st Dept 2006]). We decline to grant plaintiff declaratory relief because, here, plaintiff "'has an adequate, alternative remedy'" in its cause of action for specific performance (see Wilson v Dantas, 128 AD3d 176, 188 [1st Dept 2015], affd 29 NY3d 1051 [2017], quoting Apple Records v Capital Records, 137 AD2d 50, 54 [1st Dept 1988]).
We have considered defendant's remaining affirmative defenses and find them to be unavailing.
Accordingly, the order of the Supreme Court, New York County (Barry R. Ostrager, J.), entered September 8, 2022, which denied plaintiff's motion for summary judgment on its claims for specific performance, an injunction, declaratory relief, and attorneys' fees and to dismiss defendant's affirmative defenses, and denied defendant's cross-motion for summary judgment dismissing the complaint, should be modified, on the law, to grant plaintiff's motion for summary judgment on its claims for specific performance, injunctive relief, and attorneys' fees, direct defendant to obtain a new certificate of eligibility from HPD and convey that certificate to plaintiff, and otherwise affirmed, with costs.
Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered September 8, 2022, modified, on the law, to grant plaintiff's motion for summary judgment on its claims for specific performance, injunctive relief, and attorneys' fees, direct defendant to obtain a new certificate of eligibility from HPD and convey that certificate to plaintiff, and otherwise affirmed, with costs.
Opinion by González, J. All concur.
Webber, J.P., Oing, González, Scarpulla, Rodriguez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 30, 2023

Footnotes

Footnote 1: IARs are referred to in the Agreement as Floor Area Compensation.

Footnote 2: Defendant retains possession of the 21,000 square feet of IARs that are the subject of this proceeding. During the pendency of this action, LaGratta sold the remaining IARs to an unrelated third party for an alleged price of $228 per square foot.

Footnote 3: Supreme Court denied plaintiff's subsequent motion for a preliminary injunction, finding that "a fair reading of the contract between the parties does not guarantee Plaintiff the right to specific performance."

Footnote 4: The Agreement expressly contemplates that HPD might refuse to issue the certificate of eligibility to plaintiff and make specific performance an impossibility.