[852 NYS2d 32]

HAVANA CENTRAL NY2 LLC, Respondent-Appellant, v LUNNEY's
PUB, INC., Appellant-Respondent, et al., Defendants.

First Department, December 27, 2007

**APPEARANCES OF COUNSEL**

*Calotta Levine Samuel, LLP*, New York City (*Gerald M. Levine* of counsel), for appellant-respondent.

*Guzov Ofskin, LLC*, New York City (*Damien Matthew Bosco*, *Debra J. Guzov* and *David J. Kaplan* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

ANDRIAS, J.

Because there are triable issues of fact as to whether the

corporate defendant, Lunney's Pub, Inc., a holdover tenant, intentionally induced its landlord to breach a lease provision to timely deliver the leasehold premises to plaintiff, Havana Central NY2 LLC, a new, incoming corporate tenant, Lunney's motion for summary judgment dismissing Havana Central's first cause of action for tortious interference with contract was properly denied.

Lunney's was admittedly aware of Havana Central's lease some nine months in advance, but remained on the premises nonetheless in an attempt to secure a renewal lease from the landlord and/or to avoid closing its business and losing clientele while it sought to secure a new, nearby business location. Lunney's held over for approximately six months before it was forcibly evicted following summary proceedings. Havana Central alleges damages attributable to the holdover delays and the inability to start up its business in a timely manner.

Lunney's claims that it is not the law in New York that a prior tenant commits a tortious wrong and is liable for damages simply by holding over, relying upon an unreported May 17, 2005 order in *Kronish Lieb Weiner & Hellman LLP v Tahari Ltd.* (2005 NY Slip Op 30171[U]), which dismissed Kronish's cause of action for tortious interference based upon Tahari's failure to vacate leased premises on May 31, 2003 when its sublease expired. Kronish, an existing tenant in the building, had exercised an option to lease the space but was unable to take possession on June 1, 2003 because Tahari held over. However, on appeal, in a decision and order decided after Lunney's filed its briefs, this Court reinstated Kronish's cause of action for tortious interference against Tahari, stating, in pertinent part:

> "The causation element of tortious interference was sufficiently pleaded. A cognizable claim for tortious interference does not require an allegation that the defendant's conduct was the sole proximate cause of the alleged harm. The motion court's finding that the owner's commencement of a holdover proceeding precluded a finding of causation was incorrect where the trespass had already been committed and the proceeding was merely an effort at mitigating or remedying the owner's breach of its agreement to lease the space to plaintiff. Since the cause of action is for interference with an existing contract, rather than

a prospective economic relationship, the defense of economic justification is inapplicable (*see Bank of N.Y. v Berisford Intl.,* 190 AD2d 622 [1993]) and it is not necessary to allege that defendant used improper means or that its conduct was for the sole purpose of harming plaintiff (*see Carvel Corp. v Noonan,* 3 NY3d 182, 189-190 [2004]; *Hoesten v Best,* 34 AD3d 143, 159 [2006]; *Krinos Foods, Inc. v Vintage Food Corp.,* 30 AD3d 332, 333 [2006])'' (*Kronish Lieb Weiner & Hellman LLP v Tahari, Ltd.,* 35 AD3d 317, 318-319 [2006]).

Thus, this Court has clearly recognized a claim for tortious interference brought against a holdover tenant by a new tenant who is prevented from taking possession by the wrongful holdover. Lunney's also contends that both paragraph 24 of the new lease, which relieved the landlord of any liability to Havana Central in the event it failed to give possession on the commencement date of the lease, and paragraph 91 of the lease, which gave Havana Central the option to terminate the lease if possession was not given within 30 days of the commencement date, reflect a conditional rather than an absolute promise to deliver the premises on the commencement date. Thus, Lunney's argues, its holdover did not ''render performance impossible,'' the landlord's inability to deliver possession at that time was not a breach of the lease, and, since there was no breach by the landlord, there could be no inducement to breach by Lunney's.

However, here, as in *Kronish Lieb,* Lunney's became a trespasser once it held over and did not surrender the premises. Its right to continue in possession had expired. Likewise there is no doubt that the landlord's failure to deliver possession of the premises to Havana Central at the commencement of its lease term constituted a material breach of their lease, albeit the exculpatory language of paragraph 24, if asserted as a defense by the landlord, would deprive Havana Central of a remedy for such breach. Neither this circumstance, nor Havana Central's option to terminate the lease after 30 days, made the lease conditional or any less enforceable. Thus, it is a lease that could be tortiously interfered with. Furthermore, although Havana Central, as a consequence of the holdover, subsequently entered into an amended lease extending the initial term to compensate for the time lost, this did not effect a waiver, as Lunney's claims, of a known right by Havana Central (vis-à-vis its claim for interference with contract) as a matter of law.

■ The second cause of action, alleging tortious interference with prospective economic advantage, was properly dismissed absent evidence that Lunney's had interfered with Havana Central's new lease by wrongful means or for the sole purpose of harming it (*see Snyder v Sony Music Entertainment*, 252 AD2d 294, 299-300 [1999]). Concerning the purpose to harm, ample, unrefuted evidence in the record shows that Lunney's held over for multiple reasons, including to reap holiday profits, potentially obtain a renewal lease at the premises, and avoid shutting its business down and losing its clientele before it could relocate nearby. Concerning use of wrongful means, Havana Central alleges that, based upon its anticipated taking possession of the premises on August 1, the commencement day of its lease, it originally intended to be operating its business by October 1. As a result, it intended to book holiday parties in November and December, the busiest time of the year for restaurants and bars in the Times Square area. With that knowledge, it is alleged, Lunney's, by holding over, used unlawful or wrongful means in order to interfere with Havana Central's prospective economic advantage, by preventing it from booking those holiday parties. However, in order to plead such a cause of action, the "wrongful means" prong of such claim requires a showing that the challenged wrongful conduct (Lunney's holding over or trespass) was not directed at Havana Central, but at parties with which Havana Central had or sought to have a business relationship, i.e., the unnamed prospective holiday partygivers (*see Carvel Corp. v Noonan*, 3 NY3d 182, 192 [2004]). Here, as found by the motion court, Havana Central "has not set forth evidence of any specific contracts [or even prospective contracts] that it would have entered into, but for the interference of [Lunney's]" (2005 NY Slip Op 30164[U], *7). As explained by the Court of Appeals, in answering a question certified to it by the Second Circuit in *Carvel Corp.*, the wrongful means (in that case economic pressure) "that must be shown is not, as the franchisees [plaintiffs in federal court] assume, pressure on the franchisees, but on the franchisees' customers" (3 NY3d at 192).

■ The third cause of action, alleging prima facie tort, was properly dismissed absent evidence that Lunney's holdover was without excuse or justification, i.e., "disinterested malevolence" (*see Curiano v Suozzi*, 63 NY2d 113, 117 [1984]).

Havana Central's cross motion to amend the complaint to add HMU Lunney Restaurant Corp. as a defendant should have

been granted on renewal, where, inter alia, deposition testimony from Lunney's principals indicated that its assets had been transferred to HMU Lunney, an entity incorporated just two months prior to commencement of the instant action. Documents filed with the Secretary of State indicated Lunney's Pub, Inc. was now "inactive," and its counsel in this action was designated to accept service of process on behalf of HMU Lunney. Such evidence, together with Havana Central's showing of a viable cause of action for tortious interference with contract, warrants HMU Lunney's joinder, as it could be inequitably affected by the judgment (*see* CPLR 1001 [a]; *Thurston v Paul Bunyan Hardware Stores*, 80 AD2d 971 [1981]). Lunney's offers no credible argument of prejudice by reason of such an amendment (*see Loomis v Civetta Corinno Constr. Corp.*, 54 NY2d 18, 23 [1981]).

Accordingly, the order of the Supreme Court, New York County (Louis B. York, J.), entered July 13, 2006, which, to the extent appealed from as limited by the briefs, granted the corporate defendant's motion to renew and reargue a prior order but adhered thereto, and, to the extent appealable, denied plaintiff's cross motion to renew, should be modified, on the law, only to the extent of granting that branch of the cross motion seeking renewal of the motion to amend the complaint to add HMU Lunney Restaurant Corp. as an additional party defendant, and otherwise affirmed, without costs. The cross appeals from the order of the same court and Justice, entered October 25, 2005, which, to the extent appealed from as limited by the briefs, granted so much of defendants' earlier motion for summary judgment as dismissed the second and third causes of action against the corporate defendant, denied such relief as to the first cause of action, and denied without prejudice plaintiff's cross motion to amend and supplement the complaint, should be dismissed, without costs, as superseded by the cross appeals from the later order.

McGuire, J. (concurring in part and dissenting in part). I respectfully disagree with the majority with respect to the first cause of action for tortious interference with contract.

Paragraph 24 of the lease between Havana Central and the landlord broadly provides that

> "[i]f Owner is unable to give possession of the demised premises on the date of the commencement

of the term hereof, because of the holding-over or retention of possession of any tenant . . . or if Owner has not completed any work required to be performed by Owner, *or for any other reason*, Owner shall not be subject to any liability for failure to give possession on said date" (emphasis added).

Havana Central, however, is not left on the hook regardless of the landlord's inability to make timely delivery of the premises. Rather, under paragraph 91, Havana Central has the right to terminate the lease "[i]f Landlord is unable to give possession of the demised premises to Tenant on the commencement date of the term hereof for any reason and such failure continues for a period of thirty (30) days."

Because the landlord would not avoid liability under the lease on account of a refusal to give possession (if, for example, the landlord did not give possession because he got a better offer from another party after signing the lease with Havana Central), I agree that paragraphs 24 and 91 do not render the lease unenforceable. This appeal, however, does not turn on the general validity or enforceability of the lease.

"Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's *breach of the contract without justification, actual breach of the contract,* and damages resulting therefrom" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424 [1996] [emphasis added]). Where conduct by a plaintiff's contractual counterpart would not entitle the plaintiff to recover in an action on the contract, recovery cannot be had against a third party for inducing that same conduct on a theory of tortious interference with contract (*Krim Cartage Co. v Courier Servs.*, 52 AD2d 831, 831 [1976] [because action that defendants induced third party to commit "did not constitute a breach by [third party of its contract with plaintiff,] an action cannot be maintained against these defendants for inducing a breach thereof"]).

Here, there was no "actual breach" of the lease on account of the landlord's inability to give possession of the premises to Havana Central on or after the commencement date, let alone an "intentional procurement" by Lunney's of the landlord's "breach of the contract without justification." No provision of the lease states that the landlord is obligated under all circumstances to give possession of the premises on

the commencement date, or imposes a narrower obligation to give possession on the commencement date without regard to the landlord's inability to do so. To the contrary, the relevant language of the lease is inconsistent with any such obligation. Paragraph 24 expressly and unequivocally provides that the landlord "shall not be subject to any liability" if it is "unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over . . . of any tenant . . . or for any other reason." And if there is no contractual obligation to perform an act, the failure to perform the act cannot be a breach of the contract (*see Stratton Group, Ltd. v Sprayregen*, 458 F Supp 1216, 1218 [SD NY 1978] ["Clearly a breach (of contract) can only occur when one is under an obligation to perform in the first instance"]; *cf.* 23 Lord, Williston on Contracts § 63:1, at 436 [4th ed] [noting that "(t)he Restatement (Second) of Contracts . . . defines breach in terms of performance, stating that '(w)hen performance of a duty under a contract is due any non-performance is a breach' " and that, "(f)ollowing this general formulation, some jurisdictions state that 'breach' is the nonperformance of a duty" (quoting Restatement [Second] of Contracts § 235 [2])]).

To be sure, no provision of the lease expressly states that the landlord is "not required" or is "under no obligation" to give possession on the commencement date if it is unable to do so for any reason. Of course, if there were such a provision there could be no claim of breach (*see Martin v Camp*, 219 NY 170, 175 [1916] [party to a contract "cannot be made liable in damages for doing that which under the contract he has a right to do"]). But in substance, albeit not in form, that is what the lease provides when it expressly relieves the landlord of any liability if it is unable for any reason to give possession on the commencement date.[1] This provision, in my view, is the logical equivalent of a provision stating that the landlord is not required to give possession of the premises if it is unable for any reason to do so.

The majority asserts that there is "no doubt" that the landlord committed not only a breach but a "material

---

**1.** After a perhaps too brief struggle, I have succumbed to the temptation to invoke Holmes' "bad man" theory of law (*see* O.W. Holmes, Jr., *The Path of the Law*, 10 Harv L Rev 457, 462 [1897] ["The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it,—and nothing else"]).

breach" of its lease with Havana Central when it was unable to give possession of the premises to Havana Central on the commencement date. Unfortunately, the majority does not point to any language in the lease that imposes an obligation on the landlord to give possession on the commencement date even if it is unable to do so. Nor does the majority otherwise explain its certitude or its view that conduct (or, if you will, inaction) by the landlord that is expressly stated in the lease not to be a basis for any liability is nonetheless conduct constituting a breach of the lease.[2] The majority also is unpersuasive in characterizing the provisions of paragraph 24 as "exculpatory language" that "deprive[d]" Havana Central of a remedy for the breach the landlord supposedly committed when it was unable to give possession on the commencement date. These characterizations simply assume, without any supporting analysis, the correctness of the majority's point of view on the very issue that is in dispute—whether the landlord was obligated under the lease to give possession of the premises on the commencement date despite Lunney's actions in holding over.

There is authority for the proposition that a plaintiff alleging tortious interference with contract need not invariably prove a breach of its contract with a third party (*see e.g. Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993] [stating that the four elements of tortious interference with contract are: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach *or otherwise render performance impossible*; and (4) damages to plaintiff" (emphasis added)]). Even assuming that a party to a valid contract who has been induced to render performance of the contract impossible can do so without breaching the contract, plaintiff's tortious interference with contract claim cannot be

---

**2.** After stating Lunney's position that if the landlord did not breach the lease then Lunney's could not have induced a breach, the majority immediately goes on to state as follows: "However, here, as in *Kronish Lieb,* Lunney's became a trespasser once it held over and did not surrender the premises." Although the point of this observation is unclear, presumably the majority does not mean to suggest that a landlord necessarily breaches its lease with an incoming tenant whenever it is unable to give possession on the commencement date because the prior tenant unlawfully holds over. Whether there is a breach under those circumstances is surely a function of the terms of each particular lease. Nothing in our decision in *Kronish Lieb Weiner & Hellman LLP v Tahari, Ltd.* (35 AD3d 317 [2006]) suggests that the lease in that case contained provisions like those in paragraph 24 of Havana Central's lease.

sustained on this ground. By holding over, Lunney's at most caused the landlord to delay performance rather than render it impossible.

Putting aside the niceties of the pure question of contract law of whether the landlord breached the lease, it strikes me as indisputable that Havana Central had no legally enforceable right against the landlord to possession of the premises on the commencement date whenever the landlord was unable to give possession. And the ultimate issue in this case is a question of tort law—whether a valid cause of action for tortious interference with contract can be stated even if the plaintiff has no legally enforceable right to performance under the agreement. As I read it, Chief Judge Kaye's opinion in *NBT Bancorp v Fleet/Norstar Fin. Group* (87 NY2d 614 [1996]) answers that question in the negative. Like the "right" the tort plaintiff in that case sought to protect, the "right" that Havana Central seeks to protect—a right to possession of the premises on the commencement date of the lease—"represented no more than a hope" or "mere expectancy" (87 NY2d at 622). Such a "right," however, is "not entitled to the same protection that would have been accorded a legally enforceable right to performance under th[e] agreement" (*id.*). For precisely this reason the Court upheld the dismissal of the plaintiff's cause of action for tortious interference with contract (*id.* at 622-623). Havana Central's cause of action for tortious interference with contract should fare no better.[3]

On this score, finally, I note that if a landlord's understandable desire to avoid contractual liability to an incoming tenant in the event the existing tenant fails to vacate the premises prior to the commencement date of the new lease results in provisions like those in paragraph 24, it does not follow that the existing tenant thereby would be immunized from any liability in tort to the incoming tenant whenever it improperly holds over. According to the majority's analysis, a holdover tenant like Lunney's is a trespasser. If that is correct, the incoming tenant would appear to have a cause of action against the holdover tenant for tortious interference with prospective business relations

---

**3.** This conclusion might be fortified (or negated) by cases on tortious interference with contract in which the conduct induced by the alleged tortfeasor constituted a breach of the underlying contract (or was defined to be a breach by the contract), but the contract provided for no or nominal damages in the event of such a breach. Unfortunately, the parties have not brought any such cases to our attention.

on the theory that the holdover tenant tortiously interfered with its "prospective contract right[ ]" (*NBT Bancorp,* 87 NY2d at 621) to possession of the premises on the commencement date. Even if the holdover tenant does not necessarily commit the tort of trespass, the "wrongful means" requirement of this tort (*see id.* at 624) would appear to be satisfied. Moreover, the additional requirement that the wrongful conduct be "directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship" (*Carvel Corp. v Noonan,* 3 NY3d 182, 192 [2004]) also would appear to be satisfied. After all, that conduct is a wrong with respect to (and at least in that sense, "directed to") the landlord. We need not decide the matter, however, as Havana Central has neither alleged this theory of tortious interference with prospective business relations nor argued its applicability in its submission to this Court (*see Gustavsson v County of Westchester,* 264 AD2d 408, 409 [1999]).[4]

For substantially the same reasons stated by the majority, I agree that the second and third causes of action, for tortious interference with prospective economic advantage and prima facie tort, were properly dismissed. As to the former, I note that to the extent Havana Central relies on an assertedly fraudulent misrepresentation made to it by the principal of Lunney's to satisfy the "wrongful means" element, Havana Central has failed to allege "conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship" (*Carvel Corp.,* 3 NY3d at 192).

Because I would dismiss all three causes of action, I would not reach the issue of whether Havana Central's cross motion to amend the complaint to add HMU Lunney as a defendant should have been granted on renewal.

SULLIVAN and GONZALEZ, JJ., concur with ANDRIAS, J.P.; SAXE and MCGUIRE, JJ., concur in part and dissent in part in a separate opinion by MCGUIRE, J.

Order, Supreme Court, New York County, entered July 13, 2006, modified, on the law, only to the extent of granting that branch of plaintiff's cross motion seeking renewal of the motion to amend the complaint to add HMU Lunney Restaurant Corp.

---

**4.** The gravamen of Havana Central's second cause of action for tortious interference with prospective business relations (prospective economic advantage) is interference with the business it expected to transact with partygivers and other restaurant customers during the period in which the conduct of Lunney's prevented it from occupying the premises.

as an additional party defendant, and otherwise affirmed, without costs. Cross appeals from order, same court, entered October 25, 2005, dismissed, without costs, as superseded by the cross appeals from the later order.