Ark Rests. Corp. v Bryant Park Corp. (2025 NY Slip Op 51921(U))

[*1]

Ark Rests. Corp. v Bryant Park Corp.

2025 NY Slip Op 51921(U)

Decided on December 8, 2025

Supreme Court, New York County

Patel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 8, 2025
Supreme Court, New York County

Ark Restaurants Corp., ARK BRYANT PARK, LLC, 
 ARK BRYANT PARK SOUTHWEST LLC, and MICHAEL L. WEINSTEIN, Plaintiffs,

against
Bryant Park Corporation, Defendant, and THE CITY OF NEW YORK, 
 THE NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, and THE NEW YORK PUBLIC LIBRARY ASTOR, LENOX AND TILDEN FOUNDATIONS, Nominal Defendants.

Index No. 652009/2025

Counsel for Plaintiffs/Counterclaim-Defendants: Anthony J. Genovesi, Esq., Mordechai L. Geisler, Esq., Zachary David Kuperman, Esq., and Amanda P. Small, Esq., of Abrams Fensterman, LLP.
Counsel for Defendant/Counterclaim-Plaintiff: Gil Feder, Esq., Evan K. Farber, Esq., and Matthew Christopher Anderson, Esq. of Loeb & Loeb LLP; Bradley S. Silverbush, Esq. and Ariel Slade Bresky, Esq. of Rosenberg & Estis, P.C.
Counsel for Nominal Defendants: David Angelatos, Esq. of the New York City Law Department.

Anar R. Patel, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 117—119, 146, 151 were read on this motion to/for DISMISS.
Relevant Factual and Procedural History
The instant dispute concerns the leases for three dining establishments at Bryant Park (the "Leases") and the request for proposal ("RFP") process conducted in anticipation of the expiration of these leases. As Plaintiffs/Counterclaim-Defendants Ark Restaurants Corp., Ark Bryant Park, LLC, Ark Bryant Park Southwest LLC, and Michael L. Weinstein (collectively, [*2]"Counterclaim-Defendants") allege in their Amended Complaint (NYSCEF Doc. No. 95), in 1993, Defendant/Counterclaim-Plaintiff Bryant Park Corporation ("Counterclaim-Plaintiff") leased to Counterclaim-Defendant Ark Bryant Park, LLC the space where the Bryant Park Grill (the "Grill") now stands. The lease for the Grill was followed by another lease with Counterclaim-Defendant Ark Bryant Park, LLC for the Bryant Park Café (the "Café") and a subsequent license agreement with Counterclaim-Defendant Ark Bryant Park Southwest LLC for The Porch at Bryant Park (the "Porch"; together with the Grill and the Café, the "Premises"). The Grill and Café leases expired on April 30, 2025, while the license agreement for the Porch expired on March 31, 2025.
In anticipation of the expiration of the Leases, in 2023, Counterclaim-Plaintiff issued RFPs regarding the Premises, seeking bids from several entities for proposals for the operation of a restaurant, an outdoor café and catering facility, and an outdoor café and bar facility on the respective sites of the Grill, the Café, and the Porch. On January 27, 2025, Counterclaim-Plaintiff's Executive Director, Daniel Biederman, announced that it had selected the Jean-Georges Group and Seaport Entertainment Group, Inc. ("Seaport") to replace Counterclaim-Defendants in operating dining establishments on the Premises. Counterclaim-Defendants subsequently filed the instant suit, alleging that Counterclaim-Plaintiff's conduct of the RFP process was improper, and bringing claims for, inter alia, declaratory judgment, breach of contract, and specific performance. 
Since the filing of this suit, Counterclaim-Defendants have continued to occupy the Premises beyond the expiration dates of the Leases. Consequently, Counterclaim-Plaintiff filed its Answer with Counterclaims on May 27, 2025, bringing counterclaims for declaratory judgment, ejectment, breach of contract, use and occupancy, unjust enrichment, and tortious interference with business relations.[FN1]
NYSCEF Doc. No. 116 (Counterclaims). On July 29, 2025, Counterclaim-Plaintiff moved by order to show cause for, inter alia, an order directing Counterclaim-Defendants to pay use and occupancy during the pendency of this action. NYSCEF Doc. No. 123 (7/29/25 proposed Order to Show Cause). On August 12, 2025, the Court granted Counterclaim-Plaintiff's motion as to the use and occupancy payments. NYSCEF Doc. No. 150 (8/12/25 Decision and Order).
On July 16, 2025, Counterclaim-Defendants filed the instant motion to dismiss the declaratory judgment, use and occupancy, unjust enrichment, and tortious interference counterclaims pursuant to CPLR § 3211(a)(7) (Mot. 004). Counterclaim-Plaintiff opposes the motion.
For the reasons set forth below, the Court grants Counterclaim-Defendants' motion with respect to Counterclaim-Plaintiff's counterclaims for declaratory judgment, unjust enrichment, and tortious interference with business relations. The Court finds that the counterclaims for declaratory judgment must be dismissed as duplicative of the ejectment and breach of contract [*3]counterclaims; that the counterclaim for unjust enrichment must be dismissed with prejudice as both duplicative of the use and occupancy counterclaims and precluded by the Leases; and that the counterclaim for tortious interference must be dismissed for failure to allege that the conduct at issue was directed at a third party rather than at Counterclaim-Plaintiff. The Court denies Counterclaim-Defendants' motion with respect to the counterclaims for use and occupancy. Consequently, the counterclaims for ejectment, breach of contract, and use and occupancy survive. Counterclaim-Plaintiff is granted leave to file amended counterclaims within thirty (30) days of the filing of this Decision and Order.
Legal Analysis
"When reviewing a [party's] motion to dismiss a complaint for failure to state a cause of action [pursuant to CPLR § 3211(a)(7)], a court must give the complaint a liberal construction, accept the allegations as true and provide [the non-movant] with the benefit of every favorable inference." Doe v. Bloomberg, L.P., 36 NY3d 450, 454 (2021) (citation omitted). "The ultimate question is whether, accepting the allegations and affording these inferences, '[the non-movant] can succeed upon any reasonable view of the facts stated.'" Id. (citation omitted).
Declaratory Judgment
Counterclaim-Defendants assert that the declaratory judgment counterclaims should be dismissed "because [Counterclaim-Plaintiff's] ejectment claim[s] [are] an alternative remedy that will, if established, provide it with adequate relief." NYSCEF Doc. No. 119 at 8 (Countercl. Defs. Mem.). A party "may not seek a declaratory judgment when other remedies are available, such as a breach of contract action." 301 E. 60th St. LLC v. Competitive Sols. LLC, 217 AD3d 79, 88 (1st Dept. 2023). Consequently, claims for declaratory judgment should be dismissed as duplicative where the plaintiff has an "adequate, alternative remedy in another form of action," for example, where resolution of a separate cause of action brought by the plaintiff "will necessarily require determination" of the issues on which declaratory relief is sought. Upfront Megatainment, Inc. v. Thiam, 215 AD3d 576, 578 (1st Dept. 2023).
Here, Counterclaim-Plaintiff brings three causes of action seeking the following declaratory relief as applied respectively to each of the three Premises:
(i) a judgment declaring that the [Leases] expired on [specified dates in] 2025; (ii) a judgment declaring that [Counterclaim-Plaintiff] is entitled to immediate possession of the [Premises]; and (iii) the issuance of a judgment of ejectment for the [Premises], directing the Sheriff to remove [Counterclaim-Defendants] from the [Premises] and deliver the [Premises] to [Counterclaim-Plaintiff].
Counterclaims at ¶¶ 353—68. In this case, resolution of Counterclaim-Plaintiff's ejectment and breach of contract counterclaims—which are not addressed by the instant motion—will "necessarily require determination" of these issues. Upfront Megatainment, 215 AD3d at 578.
To demonstrate entitlement to ejectment, a party must establish: "(1) it is the owner of an estate in tangible real property, (2) with a present or immediate right to possession thereof, and [*4](3) the defendant is in present possession of the estate." RPAI Pelham Manor, LLC v. Two Twenty Four Enters., LLC, 144 AD3d 1125, 1126 (2d Dept. 2016). Thus, resolution of Counterclaim-Plaintiff's ejectment counterclaims will require determination of the issues for which Counterclaim-Plaintiff seeks declaratory relief. See Olympic Galleria, Co., Inc. v. Sitt, No. 150391/2024, 2025 WL 294689, at *3 (NY Sup. Ct. NY Cnty. Jan. 22, 2025) ("[T]he resolution of the cause of action for ejectment necessarily requires a determination that Defendant's right to possession of the Premises expired . . . and that Plaintiff has the immediate right to possession.").
The cases cited by Counterclaim-Plaintiff do not compel an alternative conclusion. Rather, these cases stand only for the proposition that a claim for declaratory relief as to the termination or invalidity of a lease may be brought alongside a claim for ejectment. See, e.g., West-Park Presbyt. Church of NY City v. Center at W. Park, Inc., 232 AD3d 521, 522 (1st Dept. 2024); C & N Camera & Elecs., Inc. v. Farmore Realty, Inc., 178 AD2d 310, 310 (1st Dept. 1991); Noamex, Inc. v. Domsey Worldwide, Ltd., 192 AD3d 817, 818—19 (2d Dept. 2021); Howard 25, LLC v. New York Pilates NYC, LLC, No. 154131/2021, 2022 WL 356981, at *1, *4 (NY Sup. Ct. NY Cnty. Feb. 07, 2022). The declaratory relief sought by Counterclaim-Plaintiff is not so limited.
To the extent that the declaratory relief as to the validity of the Leases is not precluded by the ejectment counterclaims, it is precluded by the breach of contract counterclaims. As set forth in the Counterclaims, the causes of action for breach of contract assert that Counterclaim-Defendants breached the Leases "by holding over in possession" beyond the expiration date of each respective Lease. Counterclaims at ¶¶ 385—400. Resolution of the breach counterclaims will therefore "necessarily require determination" of whether the Leases expired. Upfront Megatainment, 215 AD3d at 578. Accordingly, the counterclaims seeking declaratory relief are dismissed as duplicative.
Use and Occupancy
Counterclaim-Defendants assert that the use and occupancy counterclaims should be dismissed as duplicative of the ejectment counterclaims on the basis that use and occupancy "is simply the measure of damages in ejectment." Countercl. Defs. Mem. at 9. To be sure, "[i]n an ejectment action, a landlord may collect damages for the value of the use and occupancy." Marini v. Lombardo, 79 AD3d 932, 935 (2d Dept. 2010); Esposito v. Larig, 241 AD3d 782, 786 (2d Dept. 2025) (same). However, as Counterclaim-Plaintiff points out, use and occupancy nevertheless constitutes its own independent cause of action, and is not solely the measure of damages in ejectment. See, e.g., Sara's Studios, LLC v. Sparkle World LLC, 217 AD3d 465, 466 (1st Dept. 2023) (holding that plaintiff demonstrated "[a] meritorious cause of action for use and occupancy"); Oxford Towers Co., LLC v. Wagner, 58 AD3d 422, 422 (1st Dept. 2009) (denying "motion to dismiss the fourth cause of action (for use and occupancy)"); Lutine Realty Corp. v. Perry Films, Inc., 33 AD3d 486, 486 (1st Dept. 2006) (reversing dismissal of "the third cause of action, for use and occupancy").
Rather, use and occupancy and ejectment claims may be brought simultaneously. See, e.g., Esposito, 241 AD3d at 785—786 (reversing denial of summary judgment on plaintiff's use and occupancy claim, while affirming dismissal of plaintiff's ejectment claim for reasons other [*5]than being duplicative). Furthermore, although Counterclaim-Plaintiff could seek use and occupancy under its ejectment counterclaim, it has not elected to do so here, such that the two sets of counterclaims seek different relief (damages versus a judgment of ejectment, respectively). Consequently, Counterclaim-Defendants have failed to establish that dismissal of the use and occupancy counterclaims is warranted.
Unjust Enrichment
To establish a claim for unjust enrichment, "[a] plaintiff must show that (1) the other party was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC, 114 AD3d 888, 889 (2d Dept. 2014) (citations omitted). "The essential inquiry . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Id. "An action to recover for unjust enrichment sounds in restitution or quasi-contract. The claim rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Edelman v. Starwood Cap. Grp., LLC, 70 AD3d 246, 250 (1st Dept. 2009) (emphasis in original) (quotations and citations omitted).
For the reasons set forth below, the Court finds that the unjust enrichment counterclaim is both duplicative of the use and occupancy counterclaims and precluded by the Leases, and is therefore dismissed with prejudice. Accordingly, the Court declines to reach Counterclaim-Defendants' remaining arguments.
1. The Unjust Enrichment Counterclaim is Duplicative of the Use and Occupancy Counterclaims
In principle, use and occupancy claims address the same concern as unjust enrichment claims, but in the specific context of possession of real property: "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Edelman, 70 AD3d at 250 (emphasis in original). Thus, in the absence of a valid lease, "the tenant must remit payment for the 'use and occupancy' of the space based on the premises' fair-market value. Such payment is not 'rent,' but a means to prevent unjust enrichment to the occupant for its holding over." Saba Realty Partners LLC v. Int'l Gold Star Inc., 29 Misc 3d 850, 853 (NY Civ. Ct. Kings Cnty. 2010) (citation omitted) (emphasis added). Both causes of action sound in restitution. See Edelman, 70 AD3d at 250; Cooper v. Schube, 101 AD2d 737, 737 (1st Dept. 1984).
Courts addressing claims for use and occupancy construe such payments as restitution for unjust enrichment. See, e.g., Cooper, 101 AD2d at 737 ("[R]ecover[y] for the fair market value of use and occupancy" is properly construed as "restitution for unjust enrichment"); Trinity Ctr. LLC v. Subway Real Est. Corp., 241 AD3d 1185, 1186 (1st Dept. 2025) ("[Plaintiff's] claim for 'per diem use and occupancy charges'" pursuant to the lease "was not rent, but rather is a postlease 'means to prevent unjust enrichment to the occupant for its holding over.'" (citations omitted)); SHLP Assocs. v. State, 262 AD2d 548, 549 (2d Dept. 1999) ("[W]here the State is guilty of trespass, a landlord can recover use and occupancy under a theory of unjust enrichment."). In effect, use and occupancy constitutes the measure of damages for unjust [*6]enrichment concerning possession of real property.
To be sure, Counterclaim-Plaintiff also seeks disgorgement of profits. However, "[p]laintiffs are not entitled to disgorgement of . . . profits based on [an] unjust enrichment claim, as these damages would compensate plaintiffs beyond their losses." Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rudell & Assocs., Inc., 215 AD3d 595, 596 (1st Dept. 2023); see also People ex rel. Schneiderman v. Greenberg, 27 NY3d 490, 497 (2016) (disgorgement is "an equitable remedy distinct from restitution," concerning "wrongfully obtained profits"); Rosenberg, Minc & Armstrong v. Mallilo & Grossman, 39 AD3d 335, 336 (1st Dept. 2007) ("The trial court properly declined to instruct the jury that punitive damages may be awarded for unjust enrichment; such a cause of action effects disgorgement without regard to moral culpability."). Rather, "the 'usual and customary damages'" in circumstances concerning the ejectment of a holdover tenant entail "removal of the tenant [and] recovery of use and occupation and incidental damages." 1009 Second Ave. Assocs. v. New York City Off-Track Betting Corp., 248 AD2d 106, 108 (1st Dept. 1998). The cases cited by Counterclaim-Plaintiff do not persuade, as they address circumstances that are not at issue here.[FN2]

In sum, the "same language"—i.e., the same allegations and the same theory of damages—"forms the basis" of both the unjust enrichment and use and occupancy counterclaims. IKB Int'l, S.A. v. Wells Fargo Bank, N.A., 40 NY3d 277, 291 (2023). The unjust enrichment counterclaim is therefore duplicative of the use and occupancy counterclaims and must be dismissed.[FN3]
See id. (dismissing tort claim as duplicative for alleging the same damages as breach of contract claim); Mosaic Caribe, Ltd. v. AllSettled Grp., Inc., 117 AD3d 421, 422—23 (1st Dept. 2014) (same). 
2. The Unjust Enrichment Counterclaim is Precluded by the Breach of Contract Counterclaims
"The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." Goldman v. Metro. Life Ins. Co., 5 NY3d 561, [*7]572 (2005). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 NY2d 382, 388 (1987). As relevant here, the breach of contract counterclaims assert that:
(a) the relevant provisions of the Leases "require[] [Counterclaim-Defendants] to surrender to [Counterclaim-Plaintiff]" the Premises "upon expiration" of the Leases;
(b) Counterclaim-Defendants breached the Leases "by holding over in possession without [Counterclaim-Plaintiff's] consent"; and
(c) Counterclaim-Plaintiff has thereby suffered damages.
Counterclaims at ¶¶ 385—400. By comparison, the unjust enrichment counterclaim asserts that:
(a) Counterclaim-Defendants "ha[ve] continued to use and occupy" the Premises "[n]otwithstanding that" the Leases have expired; and
(b) "[e]quity and good conscience require" Counterclaim-Defendants to "disgorge the profits" obtained from their "unlawful and unauthorized use and occupancy" of the Premises.
Counterclaims at ¶¶ 414—19. Thus, on their face, the breach of contract counterclaims (and, implicitly, the Leases) address the same subject matter as the unjust enrichment counterclaim: i.e., Counterclaim-Defendants' continued occupancy of the Premises following the expiration of the Leases, and Counterclaim-Plaintiff's damages arising therefrom.[FN4]
 Consequently, Counterclaim-Plaintiff's "claim for unjust enrichment is barred by the existence of express contracts governing the subject matter." Rubin v. Sabharwal, 239 AD3d 553, 554 (1st Dept. 2025) (citation omitted).
Counterclaim-Plaintiff argues that the unjust enrichment counterclaim "is not precluded by the [Leases] because those agreements expired," and the unjust enrichment counterclaim "seeks recovery for" and "concerns" "events postdating the expiration of those agreements." NYSCEF Doc. No. 146 at 9—10, 18 (Countercl. Pl. Mot.). Counterclaim-Plaintiff therefore implicitly suggests that its breach of contract counterclaims do not concern "events postdating the expiration" of the Leases—but the alleged breaches arise solely from conduct following the expiration of the Leases. In effect, Counterclaim-Plaintiff argues that its breach counterclaims concern no events at all, rendering these claims a nullity. The Court declines to entertain such an interpretation.
To be sure, "where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies." [*8]Goldman v. Simon Prop. Grp., Inc., 58 AD3d 208, 220 (2d Dept. 2008); see also Forman v. Guardian Life Ins. Co. of Am., 76 AD3d 886, 888 (1st Dept. 2010) ("Plaintiffs are entitled to proceed in the alternative upon quasi-contractual theories because there is a question whether the parties' course of conduct evidenced their assent to continue the terms of the 2005 contract after its expiration."). However, there is no dispute, bona fide or otherwise, as to the existence of the Leases or their application in the dispute at issue, as Counterclaim-Defendants do not, at this juncture, contest the breach of contract counterclaims. Cf. Absolute Med. Servs., Inc. v. Garnerville Holding Co., Inc., 229 AD3d 665, 667 (2d Dept. 2024) (holding that the counterclaim-defendant, a holdover tenant, "was subject to the lease provisions" even after the expiration of the relevant lease terms). 
Consequently, the unjust enrichment claim is dismissed as arising out of the same subject matter as the Leases. Furthermore, because the unjust enrichment claim "simply duplicates, or replaces," other "conventional contract or tort claim[s]," "if [the] other claims are defective, an unjust enrichment claim cannot remedy the defects." Corsello v. Verizon New York, Inc., 18 NY3d 777, 791 (2012). The unjust enrichment claim is therefore dismissed with prejudice.
Tortious Interference with Business Relations
"To state a claim for tortious interference with prospective business relations, a plaintiff must allege (1) business relations with a third party, (2) the defendant's interference with those business relations, (3) the defendant acted for the sole purpose of harming plaintiff or used wrongful means, and (4) injury to the business relationship." Valkyrie AI LLC v. PriceWaterhouseCoopers LLP, 233 AD3d 460, 462 (1st Dept. 2024). 
Counterclaim-Defendants raise several grounds for dismissing the counterclaim for tortious interference: first, that Counterclaim-Plaintiff fails to allege causation; second, that any alleged "interference" was not directed at a third party; third, that Counterclaim-Plaintiff fails to allege malice or wrongful conduct; and fourth, that Counterclaim-Defendants' holding over is contemplated by the Leases. The Court addresses each of these arguments seriatim.
1. Causation
A plaintiff bringing a claim for tortious interference with business relations must "allege that they would have received certain alleged economic benefits 'but for' the defendant's interference." Sternberg v. Wiederman, 225 AD3d 820, 822 (2d Dept. 2024). Counterclaim-Defendants assert that Counterclaim-Plaintiff "has failed to—and cannot—allege that, but for the claimed interference, [it] would have received an economic benefit." Countcl. Defs. Mem. at 16. Counterclaim-Defendants argue that Counterclaim-Plaintiff, variously, "fails to allege that Seaport would have entered into a lease" but for Counterclaim-Defendants' interference; "fails to allege that its existing or prospective lease with Seaport has been or will be approved" by the relevant public entities; and "fails to allege that any 'interference' . . . actually delayed effectuation of a prospective lease with Seaport or Seaport's possession of the Premises." Id. at 17—18. They further contend that Counterclaim-Plaintiff "fail[s] to allege that any delay resulting from [Counterclaim-Defendants'] alleged actions caused it harm." Id. at 18. Each of these arguments fails.
Counterclaim-Plaintiff alleges that it "has a business relationship" with Seaport, and that [*9]Counterclaim-Defendants' interference "caused injury" to this relationship because, inter alia, their refusal to vacate the Premises "prevented and delayed the effectuation of any lease" with Seaport "and the commencement of necessary renovations." Counterclaims at ¶¶ 420—26. These allegations are sufficient to establish causation, particularly under the liberal standard of review on a motion to dismiss. Affording Counterclaim-Plaintiff "the benefit of every favorable inference," Bloomberg, 36 NY3d at 454, it is certainly plausible that the conduct alleged—holding over in possession of the Premises past the expiration of the Leases—would prevent the execution of a lease providing for possession of the same property.[FN5]

Counterclaim-Defendants next contend that Counterclaim-Plaintiff fails to allege that the prospective lease with Seaport "has been or will be approved" by the New York City Department of Parks and Recreation and/or the New York Public Library. Countercl. Defs. Mem. at 18. There is no dispute that approval by these third parties is necessary for the effectuation of the contemplated lease with Seaport. However, "[a] cognizable claim for tortious interference does not require an allegation that the defendant's conduct was the sole proximate cause of the alleged harm." Kronish Lieb Weiner & Hellman LLP v. Tahari, Ltd., 35 AD3d 317, 318 (1st Dept. 2006). The fact that external approvals are required does not preclude the possibility—as alleged in the Counterclaims—that Counterclaim-Defendants' vacating of the Premises operates as an additional, equally essential prerequisite to the ultimate execution of the lease.
Counterclaim-Defendants further argue that Counterclaim-Plaintiff has "admitted that the prospective lease with Seaport is still under negotiation and is subject to approval from the Parks Department and NYPL," such that Counterclaim-Plaintiff "cannot allege that any alleged interference . . . has made any difference or caused any purported delay." Countercl. Defs. Mem. at 18—19. This argument merely reframes the arguments addressed above and fails for the same reasons. 
Finally, Counterclaim-Defendants assert that Counterclaim-Plaintiff "has failed to allege that any delay resulting from [Counterclaim-Defendants'] alleged actions caused it harm." Id. at 19; see NRT Metals, Inc. v. Laribee Wire, Inc., 102 AD2d 705, 706 (1st Dept. 1984) ("[D]amages must be pleaded and proved as an essential element of a cause of action for tortious interference with business relations."). Because Seaport must complete renovations on the Premises before its planned restaurants open, Counterclaim-Defendants argue that, "[g]iven the length and uncertainty of the planned construction," Counterclaim-Plaintiff "cannot plead that it would have received rent any sooner but for [their] alleged interference." Countercl. Defs. Mem. at 19. Counterclaim-Defendants' reasoning is meritless. Any delay in the commencement of renovations resulting from Counterclaim-Defendants' alleged conduct would, all else being equal, implicitly entail a commensurate delay in the completion of such renovations and, consequently, in the initiation of rent payments. Counterclaim-Plaintiff is not required at the pleading stage to provide a detailed accounting of the specific financial impact of a still-ongoing delay that Counterclaim-Defendants appear to contemplate.
2. Whether Counterclaim-Defendants' Conduct was "Directed at" Seaport
A plaintiff bringing a claim for tortious interference with business relations must allege that the "conduct constituting 'wrongful means' must be directed at the third parties with whom plaintiff sought to have the relationship." Bradbury v. Israel, 204 AD3d 563, 565 (1st Dept. 2022); see also Ray v Stockton., 162 AD3d 1677, 1679 (4th Dept. 2018) (the plaintiff "must plead that the [plaintiff] directly interfered with a third party"). The Court finds that the Counterclaims fail to allege any conduct "directed at" Seaport, and therefore the tortious interference claim must be dismissed.
As relevant here, the Counterclaims allege only that Counterclaim-Defendants "knew of" the relationship with Seaport, "intentionally interfered" with it "by refusing to vacate" the Premises, and such interference "caused injury" to Counterclaim-Plaintiff's relationship with Seaport. Counterclaims at ¶¶ 420—24. The Counterclaims further allege that this conduct "was deliberate, premeditated, and designed to harm" Counterclaim-Plaintiff. Id. at ¶ 423. Nowhere does Counterclaim-Plaintiff allege that Counterclaim-Defendants' refusal to vacate the Premises (or any other conduct) was targeted at Seaport.
In its opposition, Counterclaim-Plaintiff argues that Counterclaim-Defendants "directly attacked" Seaport by "refusing to honor the thorough and fair RFP process" through its criticism of Seaport in several allegations made in their Amended Complaint. Countercl. Pl. Mem. at 17. Counterclaim-Plaintiff further asserts that Counterclaim-Defendants' "unlawful holding over" at the Premises is directed at Seaport because, had they vacated the Premises upon the expiration of the Leases, Seaport "would now be in possession" of the Premises. Id. Neither of these assertions remedies the defects in the Counterclaims.
First, the Counterclaims make no reference to the assertions in the Amended Complaint; instead, the sole theory of damages under the tortious interference claim arises from Counterclaim-Defendants' alleged refusal to vacate the Premises. Even if the Counterclaims did address these assertions, these statements are privileged and cannot be the basis for a tortious interference claim. See Wiener v. Weintraub, 22 NY2d 330, 331 (1968) ("[S]tatements made by counsel and parties in the course of 'judicial proceedings' are privileged as long as such statements 'are material and pertinent to the questions involved . . . irrespective of the motive' with which they are made."). Second, Counterclaim-Plaintiff's assertion that Seaport would now be in possession of the Premises but for Counterclaim-Defendants' alleged conduct is immaterial. The allegation that Seaport has been impacted by Counterclaim-Defendants' conduct does not suggest that Seaport was the target of this conduct.
Counterclaim-Plaintiff therefore fails to allege that Counterclaim-Defendants' conduct was "directed at" Seaport. Accordingly, the claim for tortious interference with business relations must be dismissed. See, e.g., Rockwell Glob. Cap., LLC v. Soreide L. Grp., PLLC, 100 AD3d 448, 449 (1st Dept. 2012) (affirming dismissal of counterclaim for tortious interference with business relations because "defendants have not alleged that plaintiff's conduct was directed at the clients with whom defendants have or sought to have a relationship"); Arnon Ltd v. Beierwaltes, 125 AD3d 453, 454 (1st Dept. 2015) (same). Nevertheless, in anticipation of Counterclaim-Plaintiff's prospective amended pleading, the Court addresses Counterclaim-Defendants' remaining arguments.
3. "Improper Means" and the Preclusive Effect of the Leases
A plaintiff bringing a claim for tortious interference with business relations must allege that "the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort." Amaranth LLC v. J.P. Morgan Chase & Co., 71 AD3d 40, 47 (1st Dept. 2009); Carvel Corp. v. Noonan, 3 NY3d 182, 190 (2004) ("[T]he defendant's conduct must amount to a crime or an independent tort."). Counterclaim-Plaintiff argues that, by holding over in possession past the expiration of the Leases, Counterclaim-Defendants committed the independent tort of trespass and therefore used improper means.[FN6]
In opposition, Counterclaim-Defendants argue that any tort liability for their alleged holding over is precluded by the existence of the Leases, which govern the instant dispute.[FN7]

Three issues arise with Counterclaim-Plaintiff's theory of liability that are not conclusively addressed by the parties' briefs. First, does Counterclaim-Defendants' alleged conduct give rise to liability for trespass, notwithstanding the presence of the Leases? Second, does Counterclaim-Defendants' alleged conduct amount to "improper means" even if trespass liability would not attach? And third, if Counterclaim-Defendants' alleged conduct constitutes "improper means" even in the absence of liability for trespass, is the interference with Counterclaim-Plaintiff's relationship with Seaport contemplated by the Leases?
Under ordinary circumstances, a tenant holding over in possession past the expiration of a lease becomes a trespasser. See, e.g., Havana Cent. NY2 LLC v. Lunney's Pub, Inc., 49 AD3d 70, 73 (1st Dept. 2007) ("[Tenant] became a trespasser once it held over and did not surrender the premises. Its right to continue in possession had expired."); Kronish Lieb Weiner & Hellman LLP v. Tahari, Ltd., 35 AD3d 317, 318 (1st Dept. 2006) (same). However, tort liability for this conduct appears to be precluded by the Leases. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc., 70 NY2d at 389. As discussed supra, the Counterclaims assert that Counterclaim-Defendants' conduct constitutes a violation of a duty established in the Leases, i.e., to vacate the Premises upon expiration of the Leases. That is, the [*10]alleged conduct "is not based on any tort obligation that was 'apart from and independent of' [Counterclaim-Defendants'] obligation under the [Leases] to peacefully vacate and surrender the hotel by the effective date of termination of the [Leases]." Eden Roc, LLLP v. Marriott Int'l, Inc., 116 AD3d 486, 486—87 (1st Dept. 2014). Under these principles, Counterclaim-Defendants' alleged conduct would not appear to give rise to a claim for trespass.
In opposition, Counterclaim-Plaintiff cites two cases finding a holdover tenant to be subject to tort liability. See Lunney's Pub, 49 AD3d 70; Tahari, 35 AD3d 317. However, neither case involved a contractual relationship between the parties.[FN8]
As detailed by the trial court in Lunney's Pub, both parties in that case were different corporate subtenants for the same premises leased by a third party. Havana Cent. NY2, LLC v. Lunney's Pub, Inc., No. 0110821/2004, 2005 WL 6013462 (NY Sup. Ct. NY Cnty. Oct. 14, 2005). As set out by the trial court in Tahari, the plaintiff in that case had an option to lease the 48th floor of a building starting on June 1, 2003; the defendant had sublet the 48th floor from a different tenant, but held over past the expiration of its sublet on May 31, 2003. Kronish Lieb Weiner & Hellman, LLP v. Tahari, Ltd., 11 Misc 3d 1057(A) (NY Sup. Ct. NY Cnty. 2006). Consequently, neither case addressed the issue at bar—i.e., tort liability in the presence of a contract governing the relationship between the parties. 
Nevertheless, the conduct at issue may give rise to liability for trespass notwithstanding the presence of the Leases where, for example, the holding over continues for a sufficiently long period. See 650 Park Ave. Corp. v. McRae, 665 F.Supp. 228, 236 (S.D.NY 1987) (holding that "[t]he ongoing, unauthorized holding over must at some point be deemed a wrong wholly distinct from the breach of the lease," such that, at a certain point, "a breach of a lease ends and a trespass begins"). However, the parties' filings do not make clear whether that threshold has been met.
Even if Counterclaim-Defendants' alleged conduct does not give rise to liability for trespass, the question remains whether the conduct nevertheless constitutes "improper means" that would support a claim for tortious interference. That is, does conduct that would otherwise constitute "improper means"—e.g., a trespass—cease being improper merely because the parties have elected to define this as a contract, rather than tort, obligation? The concurrence in the First Department's decision in Lunney's Pub appears to suggest otherwise: "Even if the holdover tenant does not necessarily commit the tort of trespass, the 'wrongful means' requirement of this tort would appear to be satisfied. Moreover . . . [the tenant's failure to vacate the premises] is a wrong with respect to (and at least in that sense, 'directed to') the landlord." Lunney's Pub, 49 AD3d at 79 (McGuire, J., concurring in part).
Finally, should Counterclaim-Defendants' alleged conduct fail to give rise to liability for trespass, but still constitute "improper means," would the claim for tortious interference [*11]nevertheless be precluded by the terms of the Leases? As discussed supra, where a contract governs the dispute at issue, conduct may not give rise to tort liability "unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc., 70 NY2d at 389. Thus, where the conduct at issue amounts to "a contingency specifically contemplated in the contract of sale," a claim for tortious interference must be dismissed. Levine v. Yokell, 245 AD2d 138, 139 (1st Dept. 1997). As discussed supra, Counterclaim-Defendants' alleged holding over in possession appears to be "specifically contemplated" in the Leases. Id. But does the same conclusion apply to any alleged interference with Counterclaim-Plaintiff's relationship with Seaport—even where such interference arises from conduct that the Leases do contemplate (i.e., Counterclaim-Defendants' holding over)?
The parties are advised to consider the issues set forth above in drafting any amended pleading(s) and subsequent motion briefing.
Accordingly, it is hereby
ORDERED that Plaintiffs/Counterclaim-Defendants Ark Restaurants Corp., Ark Bryant Park, LLC, Ark Bryant Park Southwest LLC, and Michael L. Weinstein (collectively, "Counterclaim-Defendants") motion to dismiss is GRANTED as to Counts I, II, and III for declaratory judgment; Count XIII for unjust enrichment; and Count XIV for tortious interference with business relations; and it is further
ORDERED that Counterclaim-Defendants' motion to dismiss is DENIED as to Counts X, XI, and XII for use and occupancy; and it is further
ORDERED that Defendant/Counterclaim-Plaintiff Bryant Park Corporation's ("Counterclaim-Plaintiff") claims for declaratory judgment and tortious interference are dismissed without prejudice to refiling; and it is further
ORDERED that Counterclaim-Plaintiff's claim for unjust enrichment is dismissed with prejudice; and it is further
ORDERED that Counterclaim-Plaintiff is granted leave to file amended counterclaims within thirty (30) days of the filing of this Decision and Order.
The foregoing constitutes the Decision and Order of this Court.
DATE December 8, 2025
ANAR R. PATEL, A.J.S.C.

Footnotes

Footnote 1:Counterclaim-Defendants subsequently filed their Amended Complaint on June 16, 2025, prompting Counterclaim-Plaintiff to file its Answer to the Amended Complaint, bringing substantially the same counterclaims, on June 26, 2025 (NYSCEF Doc. No. 116). The declaratory judgment, ejectment, breach of contract, and use and occupancy counterclaims are brought independently as to each of the three Premises, for a total of twelve counterclaims on these grounds.

Footnote 2:See People v. Ernst & Young, LLP, 114 AD3d 569, 569 (1st Dept. 2014) (observing that disgorgement of profits may be available "where . . . there is a claim based on fraudulent activity"); Hughes v. Lenox Hill Hosp., 8 AD3d 140, 140 (1st Dept. 2004) (requiring disgorgement of profits from a "purported sublease of the subject rent stabilized apartment" in light of the policy goals for which the rent stabilization laws were enacted). The other cases cited by Counterclaim-Plaintiff concern consequential damages, which are not asserted in the Counterclaims.

Footnote 3:Although this issue was not raised in Counterclaim-Defendants' motion, the Court finds it appropriate to dismiss on this ground, both for the substantive issues addressed here and because Counterclaim-Defendants asserted a related argument (that the unjust enrichment claim is duplicative of the ejectment counterclaims), putting Counterclaim-Plaintiff on notice. See, e.g., Amon v. Drohan, 188 AD3d 404, 405 (2020) (affirming sua sponte dismissal for failure to state a claim); Mosionzhnik v. Chowaiki, 41 Misc 3d 822, 834 (NY Sup. Ct. NY Cnty. 2013) (dismissing unjust enrichment claim as duplicative sua sponte).

Footnote 4:Although Counterclaim-Plaintiff characterizes the damages sought under the unjust enrichment claim as "disgorgement of profits," as addressed supra, Counterclaim-Plaintiff is not entitled to disgorgement of profits based on its unjust enrichment claim.

Footnote 5:Counterclaim-Defendants' reliance on testimony from Mr. Biederman is unavailing. This testimony, offered on April 22, 2025, is not controlling on the allegations in the Counterclaims, which concern conduct following this date.

Footnote 6:Counterclaim-Plaintiff does not contest that the Counterclaims do not allege that Counterclaim-Defendants "acted solely out of malice." Amaranth LLC, 71 AD3d at 47.

Footnote 7:Counterclaim-Defendants also contest whether trespass, even if established, can constitute "improper means" for a tortious interference claim. They cite to N. Main St. Bagel Corp. v. Duncan, where the Second Department held that the plaintiff "was entitled to judgment on the issue of liability" on its trespass claim, but had nevertheless "failed to establish that the respondents . . . used 'wrongful means,' such as, for example, physical violence or fraud[.]" N. Main St. Bagel Corp. v. Duncan, 6 AD3d 590, 592 (2d Dept. 2004).

However, the First Department has indicated that trespass may constitute "improper means" sufficient to support a tortious interference claim. See Havana Cent. NY2 LLC v. Lunney's Pub, Inc., 49 AD3d 70, 74 (1st Dept. 2007) ("[T]he 'wrongful means' prong of such claim requires a showing that the challenged wrongful conduct ([defendant's] holding over or trespass) was not directed at [plaintiff], but at parties with which [plaintiff] had or sought to have a business relationship."). In the face of such a conflict, this Court is bound by the First Department's interpretation. See, e.g., Mountain View Coach Lines, Inc. v. Storms, 102 AD2d 663, 664 (2d Dept. 1984).

Footnote 8:Counterclaim-Plaintiff also cites B & B Mall Assocs., Inc. v. Hassen, 2022 NY Misc. LEXIS 51218 (NY Sup. Ct. Westchester Cnty. Apr. 18, 2022), in which the court declined to dismiss claims of both breach of contract and trespass. However, the claim for trespass in Hassen was predicated on allegations that the defendant tenant of record, "as the sole member" of the non-tenant LLC occupying the premises, "misused [the LLC] to cause it to trespass." Id. at *6. The conduct at issue therefore does not appear to have been the subject of any duty established by the applicable lease contract.